Argued and submitted May 3, reversed and remanded on appeal; affirmed on cross-appeal July 7, petition for review denied December 14, 1999 (329 Or 553)

# THE STATE OF OREGON,
for the use and benefit of
## McAMIS INDUSTRIES OF OREGON, INC.,
an Oregon corporation,
*Respondent - Cross-Appellant,*

*v.*

## M. CUTTER COMPANY,
an Oregon corporation,
and Indemnity Company of California,
a California corporation,
*Appellants - Cross-Respondents.*

(9504-02347; CA A101156)

984 P2d 909

E. Joseph Dean argued the cause and filed the briefs for appellants - cross-respondents.

H. Lee Cook argued the cause for respondent - cross-appellant. With him on the reply brief was Stewart Sokol & Gray, LLC.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

## BREWER, J.

Defendants M. Cutter Company (Cutter) and Indemnity Company of California (ICC) appeal from a money judgment following a trial to the court in this breach of contract action stemming from damage to two barges. Among other contentions on appeal, defendants assign error to the trial court's refusal to grant summary judgment or, alternatively, their motion at trial for judgment as a matter of law in their favor on the ground that plaintiff's claim was barred by the doctrine of claim preclusion. Plaintiff cross-assigns error to the trial court's order allowing defendants to raise the defense of claim preclusion by supplemental pleading. We reverse and remand on appeal and affirm on cross-appeal.

In 1994, Cutter chartered two barges from plaintiff for use in a dredging project at the Port of Portland. Cutter provided a performance and payment bond issued by its surety, ICC. The charter party provided that surveys would be performed at the beginning and end of the project in order to assess any damage to the barges. Shortly after Cutter finished the Port of Portland project, it agreed to charter the same two barges for a project at Chinook Channel on the Columbia River. In the Chinook Channel charter party, plaintiff and Cutter agreed to dispense with the usual beginning-of-project (on-hire) survey, as well as the Port of Portland charter's end-of-project (off-hire) survey. The trial court found that the parties intended to determine *all* damage to the barges incurred on both projects at the end of the Chinook Channel project.

After the Chinook Channel project was finished, the off-hire survey disclosed that the barges had been damaged. While the barges were being repaired, Cutter did not pay charter rent.

On April 10, 1995, plaintiff initiated two actions against defendants. The first was filed in federal district court under the Miller Act, 40 USC § 270b (1994), for damages arising out of the Chinook Channel project. *U.S. for McAmis Industries v. M. Cutter Co.*, 130 F3d 440 (9th Cir 1997). The second action, which is the subject of this appeal, was filed in Multnomah County Circuit Court for damages

arising out of the Port of Portland project under the Little Miller Act, ORS 279.526 to ORS 279.542.

In May 1996, the trial court stayed this action pending the outcome of the federal action. In June 1996, the federal district court granted plaintiff's motion for summary judgment and, in July 1996, entered a money judgment in the sum of $192,195.66 in plaintiff's favor against defendants. Both parties appealed the federal district court's judgment to the Ninth Circuit Court of Appeals. In December 1997, the Ninth Circuit affirmed the district court, except for the damage award based on physical damage to the barges on the Chinook Channel project, which it remanded to the district court. *McAmis Industries*, 130 F3d at 441; *U.S. for Use and Benefit of McAmis Industries of Oregon, Inc. v. M. Cutter Co.,* 132 F3d 40 at 8 (mem) (1997). On December 17, 1997, defendants filed an unopposed petition for rehearing, requesting that the Ninth Circuit affirm the federal district court's judgment in its entirety. In January 1998, the Ninth Circuit issued an order affirming the district court's judgment in its entirety.

■ Meanwhile, in July 1997, defendants moved to supplement their answer in this case to assert the defense of claim preclusion based on the existence of the district court judgment in the federal court action. The trial court granted that motion in September 1997, despite plaintiff's objection. Defendants thereafter moved for summary judgment based *in part on claim preclusion. The trial judge denied summary judgment, explaining at oral argument on the motion that

"The only way you have claim preclusion is if the [federal] judge ruled on the identical issues that are before me because if there were not the same issues presented to her, or the same claim presented to her, and she made the decision about something other than what I am making a decision [about], then I don't see how the plaintiffs can be precluded from presenting whatever case is left."[1]

---

[1] As defendants correctly observe, the trial judge's comments suggest that she may have acted under the mistaken impression that claim preclusion applies only to the separate litigation of the same issue of fact or law. That limitation applies to the doctrine of issue preclusion but does not similarly restrict claim preclusion. *Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990); *Roth v. Garner*, 157 Or App 400, 404, 970 P2d 675 (1998).

Trial was held before the court, without a jury, in December 1997. Although contested evidence was submitted, much of the evidence was presented on written stipulation. At trial, defendants moved for judgment as a matter of law based, in part, on the alleged preclusive effect of the federal court judgment. The trial court also denied that motion.

In February 1998, the trial court entered judgment for plaintiff in the sum of $8,453.89, the amount by which it concluded the damage to the barges exceeded the federal court award. Among other undisputed findings of fact, the trial court found, in part, as follows:

"9. M. Cutter and [plaintiff] entered into a new Bareboat Charter Party for charter of the same barges on a project entitled 'Columbia River Maintenance Dredging, Chinook Channel * * * on February 1, 1995 to begin on February 5, 1995. * * * The parties orally agreed that M. Cutter would not be required to do the off-hire survey at the conclusion of the Port of Portland Project and agreed in writing that M. Cutter would not be required to do the on-hire survey otherwise required at the start of the Chinook Project. * * *

"10. Implicit in the parties' second contract to forego the on-hire and off-hire survey between the Port of Portland Project and the Chinook Project, was the agreement that the parties would not be required to ascertain when during M. Cutter's possession of the barges damages to the barges were sustained, e.g., whether during the Port of Portland Project or the Chinook Project. Rather, it was the intent of the parties that all damages M. Cutter caused to the barges sustained during either project would be determined by surveys of the barges after the conclusion of the Chinook Project.

"10A. The parties agreed at the end of the Port of Portland Project to not make any determination of whether damages had occurred to either barge during the Port of Portland Project.

"11. It was also the intent of the parties that M. Cutter would be responsible for all damage identified by surveys conducted after the conclusion of the Chinook Project, and that M. Cutter would be responsible for charter hire on the two barges at the rates identified in the Port of Portland Charter until the damage was repaired."

The court also entered a supplemental judgment in plaintiff's favor for attorney fees and costs. This appeal followed.

■ Although defendants are the appellants in this case, plaintiff makes several cross-assignments of error, the first of which requires discussion before we address defendants' arguments. Plaintiff contends that claim preclusion does not apply in this case and, therefore, the trial court abused its discretion in granting defendants' motion to supplement their answer to include the claim preclusion defense after entry of the federal district court judgment. Defendants respond that the trial court properly allowed the supplemental pleading, because it raised issues that arose *after* the state case began.[2] We review the grant of a motion to amend or supplement pleadings for abuse of discretion. *Hall v. Fox*, 106 Or App 377, 380, 808 P2d 99 (1991).

■ Even if we agreed with plaintiff that claim preclusion does not apply in this case, the existence and timing of entry of the federal court judgment justified the authorization of the supplemental answer. Plaintiff makes no serious claim of prejudice arising from the court's order. The supplemental answer was filed several months before trial and the issues raised by that pleading were fully and fairly litigated. It was well within the trial court's broad discretion under ORCP 23 E to allow defendants to supplement their answer.

Having disposed of plaintiff's procedural objection, we next turn to defendants' first and second assignments of error, which raise identical issues on separate procedural grounds. Defendants contend that the trial court erroneously denied their motion for summary judgment and subsequent motion for judgment as a matter of law, each of which asserted claim preclusion arising from the federal court judgment.[3] We need not decide whether the trial court's denial of

---

[2] ORCP 23 E, which authorizes the filing of supplemental pleadings, provides, in part:

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

[3] Plaintiff raises two arguments challenging the justiciability of defendants' assignments of error based on claim preclusion that we will address following our discussion of the merits.

defendants' summary judgment motion is reviewable,[4] since the trial court's denial of defendants' motion for judgment as a matter of law, made during trial, is unquestionably reviewable.

We will sustain the trial court's ruling if there is substantial evidence to create a triable issue. *Abbott v. West Extension Irrigation District*, 110 Or App 385, 387-88, 822 P2d 747 (1991), *rev den* 313 Or 299 (1992); *Shook v. Travelodge of Oregon*, 63 Or App 137, 142, 663 P2d 1280, *rev den* 295 Or 541 (1983). We review the legal issues raised by the motion for errors of law.

The doctrine of claim preclusion prevents parties from litigating more than one action based on the same transaction or series of connected transactions. *Drews*, 310 Or at 141.

> "[A] plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on [claim preclusion] grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action." *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982).

The critical disagreement between the parties pertains to the threshold issue of the claim preclusion analysis: whether the Port of Portland and Chinook Channel transactions were closely enough connected to justify the application of claim preclusion based on the federal court judgment. In order to answer that question, we inquire whether the transactions were " *'related in time, space, origin, or motivation,* [and] whether they *form a convenient unit,'* " as well as whether they were " *'substantially of the same sort and similarly motivated.'* " *Whitaker v. Bank of Newport*, 313 Or 450, 456, 836 P2d 695 (1992) (quoting *Troutman v. Erlandson*,

---

[4] *See Heidtke v. Int'l Brotherhood of Boilermakers*, 104 Or App 473, 475, 801 P2d 899 (1990) (following a trial on the merits, we will not review denial of a motion for summary judgment unless that motion was based on purely legal grounds).

287 Or 187, 206, 207, 598 P2d 1211 (1979) (emphases in *Whitaker*).

The time element requires the occurrence of "enough events to give rise to the second claim * * * before the first claim is brought so that the party against whom preclusion is asserted *could* have combined his or her later claims with the earlier ones." *Whitaker*, 313 Or at 456 (emphasis in original). Here, *all* of the events giving rise to the Port of Portland project claim took place before plaintiff filed the federal action. In fact, both projects had been completed and all of the damage to the barges was done well before plaintiff commenced either proceeding. Therefore, we conclude that the time element weighs in favor of claim preclusion in this case.

The second element, space, weighs somewhat against claim preclusion. The Port of Portland project unfolded in state waters, while the Chinook Channel project was in federal waters near the mouth of the Columbia River. However, the space element is less significant in this case than it might be otherwise, because the events are closely related in time. *Whitaker*, 313 Or at 457 (spatial separation "will lose some of its significance if the events are closely related in time").

The third element, origin, evaluates whether "whatever it was that caused the party against whom preclusion is asserted to complain in the first place" is the same in both actions. *Id.* This element focuses on the plaintiff and its underlying injury. Here, that injury was the same in both actions: physical damage to the same two barges and unpaid rental charges that accrued during repairs, resulting in financial losses.[5] The origin element therefore weighs in favor of preclusion.

The fourth element, motivation, focuses on Cutter and the reasons for its actions. "When a party commits a series of acts[,] * * * the victim of those acts is a single party and the acts all were motivated by a common end, scheme or plan, it is reasonable to treat all the acts as a single occasion for judicial relief." *Id.* That element is not especially helpful with respect to the physical damage to the barges, since that

---

[5] The trial court ruled against plaintiff on its rent claim.

damage was not intentionally inflicted. To the extent that we can surmise any motivation in damaging the barges, it may be only that Cutter meant to use the barges as the parties intended, paying for any damage at the conclusion of both projects. However, the motivation element is sufficiently tangential to the transactions that we regard it as weighing neither for nor against preclusion.

Next, we inquire whether requiring plaintiff to join all of its claims in a single proceeding would have been more convenient than was splitting them. *Id.* at 458. It is true that the legal issues involved in construing the charter agreements are somewhat distinct: the Port of Portland charter implicated the state Little Miller Act, while the Chinook Channel charter involved the federal Miller Act. However, common factual issues unite the two claims. In both projects, the parties agreed to the same surveyor. His pivotal testimony would essentially be replicated in separate proceedings. In fact, the trial court in this case used the off-hire survey at the end of the second project to determine the combined damage to the barges from both projects. The court then subtracted the damages the federal court determined applicable to the Chinook Channel project in order to calculate the remainder attributable to the Port of Portland project. In this case, splitting the transactions into separate actions may have actually increased the overall complexity of the litigation by preoccupying both courts with sorting out which damages were attributable to each project. Consequently, the convenience factor weighs in favor of claim preclusion.

The final element asks whether the actions complained of were similar.

> "If one harmful act simply has been repeated several times, that suggests preclusion. On the other hand, if the acts involved were utterly different * * * the argument for preclusion is diminished. The question is intertwined closely with the issue of [origin]; where two very different acts combine to cause a single form of harm, the argument for preclusion is strengthened." *Id.* at 458-59.

The harmful acts here, physical damage to the barges, are so similar that the difficulty of ascertaining which damage was

perpetrated during each project was a major complicating issue in this case. This strong similarity also weighs in favor of preclusion.

■ On the whole, the *Troutman* factors weigh in favor of preclusion. Nevertheless, plaintiff argues that claim preclusion is inapplicable, because the charter parties constituted separate contracts. Plaintiff overlooks the principle that claim preclusion also applies to claims arising from a *series of connected transactions. Drews,* 310 Or at 141.[6] In this case the parties designed the charter agreements to overlap. Splitting claims on those agreements for litigation worked against the apparent purpose behind waiving the two middle surveys: to calculate damages based on the entire period Cutter used the barges. The transactions were sufficiently connected to justify applying claim preclusion to bar the separate litigation of claims arising from them.

■ In addition to determining whether the transactions at issue were the same or closely connected, claim preclusion requires that the second action seek an additional or alternate remedy to the remedy sought in the first action. *Rennie,* 294 Or at 323. Claim preclusion applies to separate actions seeking damages for different types of injuries arising from the same or connected transactions. *See, e.g., Peterson v. Temple,* 323 Or 322, 332, 918 P2d 413 (1996) (separate actions splitting claim for personal injury and property damage arising from same incident are barred by claim preclusion). That is clearly the case here: in the federal action, plaintiff sought to recover damages under the federal Miller Act for damages on the Chinook Channel project. *McAmis,* 130 F3d at 440. In state court, plaintiff pursued damages incurred in the Port of Portland project under the Little Miller Act. Consequently, the state claim satisfies the second major requirement for claim preclusion.

■ The final condition for claim preclusion requires us to determine whether the claims in this case "could have been

---

[6] *See, e.g., Colhouer v. Union Pacific R.R.,* 275 Or 559, 551 P2d 1291 (1976) (general contractor's claim against owner for attorney fees on lien foreclosure barred by claim preclusion because claim could have been asserted in previously adjudicated action by subcontractor against owner and general contractor, even though general contractor had separate contracts with owner and subcontractor).

joined in the first action." *Rennie*, 294 Or at 323. The federal courts have supplemental jurisdiction over state claims that are "so related" to the federal claims before them "that they form part of the same case or controversy." 28 USC § 1367a (1194). A federal district court may decline such jurisdiction only if the state law claim is predominant, if it is novel or complex, if all federal claims have been dismissed, or if other "compelling" reasons exist. 28 USC § 1367c (1994); *Executive Software v. U.S. Dist. Ct.*, 24 F3d 1545, 1555-56 (9th Cir 1994). However, it need not do so *sua sponte. Acri v. Varian Associates, Inc.*, 114 F3d 999, 1000 (9th Cir 1997).

The state claims arising out of the Port of Portland project fulfill the federal statutory requirement for supplemental jurisdiction. The fact that the federal court might have refused to exercise that jurisdiction, had it found cause under section 1367c, did not excuse plaintiff from the requirement that it attempt joinder. *Rennie*, 294 Or at 327 (plaintiff "must attempt to have all claims against a defendant arising out of one transaction adjudicated in one court in one proceeding"). Plaintiff did not make such an attempt. Therefore, we conclude that each of the requirements for application of the doctrine of claim preclusion are satisfied in this case.

Our analysis of the application of claim preclusion in this case is buttressed by the striking factual similarities between this case and *Rennie*. In *Rennie*, the plaintiff filed actions in federal and state court based on a single transaction. *Id.* at 321. Although the defendant was identical in both actions, the plaintiff's legal theories were distinct: in federal court he alleged violations of federal securities law; in state court he alleged common-law fraud. *Id.* The plaintiff made no attempt to join his state claims in the federal action and argued to the state trial court that it was the *defendant's* responsibility to invoke the federal court's pendent jurisdiction. *Id.* at 321-22. The trial court stayed the state action pending the outcome of the federal case. *Id.* at 322. After the federal court entered judgment, the defendant raised the defense of claim preclusion in the state proceeding. *Id.* The Supreme Court concluded that claim preclusion barred the plaintiff's state action. *Id.* at 333.

■■ Plaintiff nevertheless makes two further arguments challenging the justiciability of defendants' assignments of error. First, plaintiff contends that defendants consented to or acquiesced in the claim splitting they now criticize. Plaintiff complains that defendants never asserted that the federal court action should include all damages arising from both projects. *Rennie* holds that a party may waive claim preclusion by consenting to claim-splitting, provided the first court expressly withholds judgment on the claim that it does not decide, reserving it for later litigation. *Id.* at 328. *See also Restatement (Second) of Judgments* § 26, comment a (1982) (claim-splitting not barred when the defendant consents or acquiesces). Here, we find nothing in the record to indicate that defendants agreed to or acquiesced in claim-splitting. Furthermore, the federal district court did not expressly withhold judgment on the state claim, a condition to the avoidance of claim preclusion by acquiescence or consent. *Rennie,* 294 Or at 330. Therefore, plaintiff's argument fails.

■■ ■■ Plaintiff also argues that defendants are judicially estopped from asserting claim preclusion. Judicial estoppel bars a party "from assuming a position in a judicial proceeding that is inconsistent with the position that the same party has successfully asserted in a different judicial proceeding." *Hampton Tree Farms, Inc. v. Jewett,* 320 Or 599, 609, 892 P2d 683 (1995). Plaintiff contends that defendants adopted inconsistent positions in the federal and state courts. Specifically, plaintiff complains that defendants did not dispute plaintiff's position in the federal action that it sought damages for the Chinook Channel project only and then argued to the trial court in this case that plaintiff bore the burden of proving in which project each item of damage occurred. Plaintiff points out that, in their successful petition for rehearing in the Ninth Circuit, defendants asked that court to affirm the district court's judgment—which addressed only the issue of damages from the Chinook Channel project—in its entirety. Therefore, plaintiff argues, defendants may not assert that the federal district court decided anything but the issues arising out of the Chinook Channel charter.

■■ Plaintiff's argument cannot be reconciled with the requirements of judicial estoppel. Judicial estoppel is not applicable unless a party's position in separate proceedings

are "clearly contradictory." *See, e.g., Chavez v. Boise Cascade Corporation*, 307 Or 632, 638 n 3, 772 P2d 409 (1989). Defendants' earlier conduct did not clearly contradict its position that claim preclusion bars this action. Plaintiff, not defendants, chose dual forums for the litigation of its dispute with defendants. In view of plaintiff's decision to maintain two separate lawsuits arising from closely connected transactions, defendants were entitled to assert all procedural and substantive arguments available to protect themselves from the risks posed by that decision, including the risks of inconsistent results and overlapping recoveries. Defendants chose not to relitigate plaintiff's physical damage claim on the Chinook Channel project in the federal trial court, despite the appeals court's invitation to do so. Defendants owed plaintiff no duty to accept that invitation and were entitled to permit the entry of the final judgment that plaintiff sought. Moreover, because they were sued separately on each charter party, defendants' position that plaintiff was required to prove its damages on each project separately was both understandable and not clearly contradictory to its claim preclusion defense. Claim preclusion focuses on what *could have been* litigated in the first action to reach judgment,[7] rather than on the defendants' protective response to the dilemma of litigation on two fronts. Defendants are not judicially estopped from asserting claim preclusion.

Because this action was barred by claim preclusion as a result of the judgment in the federal action, the trial court erred in denying defendants' motion for judgment as a matter of law. In view of our disposition of defendants' second assignment of error, we need not address the parties' remaining assignments and cross-assignments of error.

Reversed and remanded on appeal; affirmed on cross-appeal.

---

[7] *See, e.g., Lee v. Mitchell*, 152 Or App 159, 166, 953 P2d 414 (1998) (claim preclusion applies "to all claims against the defendant that were available to the plaintiff arising from that transaction, whether or not the plaintiff actually asserted them").