Argued and submitted January 14, decision of Court of Appeals reversed, and
case remanded to Court of Appeals for further proceedings May 29, 2009

## RAM TECHNICAL SERVICES, INC.,
an Oregon corporation;
Charles Stalnaker
and Susan Stalnaker,
*Petitioners on Review,*

*v.*

John J. KORESKO;
Ram Technical Services
Voluntary Employees' Beneficiary Association;
Regional Employers' Assurance Leagues
Voluntary Employees' Beneficiary Association;
and Pennmont Benefit Services, Inc.,
a Pennsylvania corporation,
*Respondents on Review,*

*and*

## GREAT SOUTHERN LIFE INSURANCE COMPANY,
a Texas corporation;
The Corben Education Services, Inc.,
an Oregon corporation;
and Thomas W. Crosswhite,
*Respondents on Review.*

(CC CV04100199; CA A130143; SC S055865)

208 P3d 950

Susan D. Marmaduke, Harrang Long Gary Rudnick PC, Portland, argued the cause and filed the brief on behalf of petitioners on review. With her on the brief were William F. Gary, Sharon A. Rudnick, and Jona J. Maukonen.

Lisa E. Lear, Bullivant Houser Bailey PC, Portland, and Scott Kaplan, Stoel Rives LLP, Portland, argued the cause and filed the brief for respondents on review John J. Koresko, Ram Technical Services Voluntary Employees' Beneficiary Association, Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association, Pennmont Benefit Services, Inc., and Great Southern Life Insurance Company. With them on the brief were Robert B. Miller, Andrew C. Hanan, Conrad, O'Brien, Gellman & Rohn, Virginia L. Miller, and Anderson Kill & Olick PC.

Eric K. Helmy, The Helmy Law Firm PC, Portland, filed the brief for respondent on review Thomas W. Crosswhite.

No appearance on behalf of respondent on review The Corben Education Services, Inc.

KISTLER, J.

**KISTLER, J.**

Plaintiffs filed an action in federal district court, alleging claims arising under the Employment Retirement Income Security Act (ERISA), 29 USC § 1132 *et seq*. The district court dismissed plaintiffs' federal action, and plaintiffs filed an action in state court, raising parallel state law claims. The question that this case presents is whether either claim preclusion or the statute of limitations bars plaintiffs from pursuing their state law claims in state court. The state trial court ruled in defendants' favor on both grounds and dismissed plaintiffs' action. The Court of Appeals affirmed, relying on claim preclusion. *RAM Technical Services, Inc. v. Koresko*, 215 Or App 449, 171 P3d 374 (2007), *adh'd to on recons*, 217 Or App 463, 177 P3d 10 (2008). We allowed plaintiffs' petition for review and now reverse the Court of Appeals decision and remand for further proceedings.

Plaintiffs filed a complaint in the United States District Court for the District of Oregon, raising claims under ERISA. Plaintiffs alleged that defendants had fraudulently induced them to enter into an agreement creating an employee benefit plan and sought, under section 1132(a)(3)(B) of ERISA, either rescission of their agreement or imposition of a constructive trust on payments that they had made to defendants.[1] Defendants moved to dismiss plaintiffs' complaint for failure to state a claim for relief under ERISA, and the district court granted their motion. The district court reasoned that section 1132(a)(3) does not provide a basis for obtaining the relief that plaintiffs sought—rescission of an employee benefit plan. *Cf. Massachusetts Mut. Life Ins. Co. v. Russell*, 473 US 134, 146-48, 105 S Ct 3085, 87 L Ed 2d 96 (1985) (holding that the cause of action set out in 28 USC section 1132(a)(2) did not authorize the type of damages that the plaintiffs sought in

---

[1] In their first two claims, plaintiffs alleged that defendant had fraudulently induced them to purchase insurance products to fund a pension benefit plan. Specifically, they alleged that defendants had told them that the plan did not require mandatory annual contributions when it did. Plaintiffs' first two claims differed only in the relief that they sought. The first claim sought rescission; the second, the imposition of a constructive trust. Additionally, plaintiffs alleged what they styled as a claim for relief for prejudgment interest and a claim for relief for attorney fees. The latter two claims are not relevant to the issues raised here.

that case). The district court recognized that an action to rescind an employee benefit plan because of fraud in the inducement arises, if at all, under state law. The district court accordingly ruled that plaintiffs' complaint should be dismissed for failure to state a claim for relief under ERISA.

After the district court issued its opinion, it entered an order stating that it "granted [defendants'] motion to dismiss plaintiffs' claims due to lack of federal jurisdiction." The district court entered judgment, and defendants later moved to clarify the earlier order. In resolving that motion, the district court ruled:

> "Defendants seek to clarify a Minute Order issued by this court indicating that plaintiffs' Complaint had been dismissed for lack of federal jurisdiction. Defendants emphasize that the court found in its Opinion and Order dated April 15, 2004, that plaintiffs had failed to state a claim for which relief could be granted under [ERISA]. Plaintiffs oppose the motion, arguing that the court instead found that it lacked subject matter jurisdiction over plaintiffs' claims because they could not assert a cause of action under ERISA.

> "Defendants' Motion to Correct Record of Order (doc. 82) is DENIED, with the following clarification. As specified in the court's written Opinion and Order, plaintiffs' Complaint was dismissed for failure to state a cognizable ERISA claim. While the absence of a federal question rendered the court without subject matter [jurisdiction] over the substance of plaintiffs' allegations, the basis for the dismissal of plaintiffs' claims was nonetheless the failure to state a claim for which relief could be granted. The court's opinion, of course, is limited to plaintiffs' claims asserted under ERISA."

Before the district court entered judgment in the ERISA action, plaintiffs filed an action in state court alleging parallel state fraud claims and seeking either rescission of the agreement or the imposition of a constructive trust on the funds that plaintiffs had paid to defendants. Plaintiffs' state claims arise out of the same transaction that gave rise to their ERISA claims, and the factual allegations are virtually identical. Plaintiffs' state claims differ from their federal claims primarily in the legal theory (fraud as opposed to

ERISA) that provides a basis for recovery for defendants' allegedly wrongful acts.

Defendants moved for summary judgment in the state action, arguing that claim preclusion and the statute of limitations provided complete defenses to plaintiffs' claims. The trial court granted summary judgment on both grounds and entered judgment in defendants' favor. On appeal, the Court of Appeals affirmed the trial court's judgment, reasoning that claim preclusion barred plaintiffs from asserting, in the state action, any state law claims that they could have raised under the doctrine of supplemental jurisdiction in the federal action. *Ram Technical Services, Inc.*, 215 Or App at 462. The Court of Appeals observed that, in 1990, Congress had broadened the federal courts' supplemental jurisdiction to hear pendent state claims. *Id.* at 460. It concluded that those "broadened supplemental jurisdiction rules not only allow plaintiffs to litigate both state and federal issues at once in federal court, but they also compel plaintiffs to assert all of their transactionally related claims in a single federal forum—or risk losing them to claim preclusion." *Id.* at 461.

This court had quoted a different rule from the *Restatement (Second) of Judgments* in *Rennie v. Freeway Transport*, 294 Or 319, 326, 656 P2d 919 (1982), as the Court of Appeals implicitly recognized. *See Ram Technical Services, Inc.*, 215 Or App at 462 (discussing an earlier Court of Appeals decision, *Ron Tonkin Gran Turismo v. Wakehouse Motors*, 46 Or App 199, 611 P2d 658, *rev den*, 289 Or 373 (1980), that had followed a tentative draft of the *Restatement (Second) of Judgments*). The *Restatement* recognizes that, as a general rule, claim preclusion will bar a plaintiff who litigates a federal claim in federal court from relitigating state claims that the plaintiff could have but did not litigate in the federal action. *See Rennie*, 294 Or at 326 (quoting *Restatement (Second) of Judgments* § 25 comment e (1982)). However, the *Restatement* also recognizes an exception to that general rule: If the federal court either clearly lacked jurisdiction over any pendent state law claims or, having jurisdiction, clearly would have declined to exercise its discretion to hear those state law claims, then claim preclusion does not bar litigating those claims. *Id.*

The Court of Appeals concluded that the 1990 federal statute had superseded the exception set out in the *Restatement*; however, it also addressed the exception. It reasoned that, even if the exception were still good law, "it is by no means 'clear' here that the federal court would have dismissed a common-law fraud claim if it had been asserted in the federal action." *Ram Technical Services, Inc.*, 215 Or App at 462. The court explained that the "law governing federal supplemental jurisdiction has undergone significant changes" and "the expansive exercise of supplemental jurisdiction dictates that all claims * * * be joined and, at least potentially, be subject to adjudication in one forum." *Id.* The court accordingly held that claim preclusion barred plaintiffs from asserting their fraud claims in state court. Having held that plaintiffs' claims were precluded, the Court of Appeals did not reach the question whether those claims were also time-barred, nor did it reach various cross-assignments of error that some defendants had raised. *Id.* at 452 n 2.

We begin with the question of claim preclusion. The Court of Appeals' resolution of that question turns, as do defendants' arguments, on the proposition that Congress expanded the scope of the federal courts' supplemental jurisdiction in 1990 in a way that undercuts the validity of the exception set out in the *Restatement*. We begin by discussing the scope of the federal courts' supplemental jurisdiction, both before and after the 1990 legislation. We then discuss this court's decision in *Rennie*, which considered whether a plaintiff's failure to raise a state claim in federal court precluded him from later raising that claim in state court. Finally, we turn to whether the exception stated in the *Restatement* and quoted in *Rennie* is still valid and, if it is, how it applies in this case.

Federal courts have limited subject matter jurisdiction. They have jurisdiction to hear cases arising under federal law and cases in which, among other circumstances, the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 USC § 1331 (federal question jurisdiction); 28 USC § 1332 (diversity jurisdiction). When a federal court has jurisdiction over a case, it also may have jurisdiction to hear related claims. For example, a plaintiff in federal court may allege that one claim in a case arises

under federal law, giving the court federal question jurisdiction, and also seek to assert a related state law claim over which the court would not otherwise have had jurisdiction. In *Mine Workers v. Gibbs*, 383 US 715, 816 S Ct 1130, 16 L Ed 2d 218 (1966), the Supreme Court explained when a federal court will have the power to hear related state law claims:

> "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin*, 289 U. S. 103 [(1933)]. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole."

*Id.* at 725 (emphasis in original).

The Court also recognized in *Gibbs* that, even when a federal district court has the power (or pendent jurisdiction, as it was then called) to hear related state law claims, the court has discretion to decline to exercise that power. *Id.* at 726. The Court explained that, as a general matter, "considerations of judicial economy, convenience and fairness to litigants" should inform the exercise of that discretion. *Id.* The Court then discussed several recurring situations, one of which arises when a federal district court dismisses before trial the federal claims that gave rise to federal question jurisdiction. The Court stated that, "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state law claims should be dismissed as well." *Id.* Later, the Court explained that its statement from *Gibbs* "does not establish a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 US 343, 350 n 7, 108 S Ct 614, 98 L Ed 2d 720 (1988). Rather, it identifies the appropriate balance in the usual case "in which all federal claims are eliminated before trial." *Id.*

In 1990, Congress adopted 28 USC section 1367. Subsection (a) of that statute provides, in part:

"Except as provided in subsections (b) and (c) * * *, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Subsection (a) codifies, in large part, the holding of *Gibbs*, which defined the power of a federal court to exercise supplemental jurisdiction over related state claims. *See* Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, 13D *Federal Practice and Procedure* § 3567.1, 336 (2008) ("Congress intended to codify the result in United Mine Workers v. Gibbs." (footnote omitted)).[2]

Subsection (c) of section 1367 recognizes, as *Gibbs* did, that federal courts have discretion to decline to exercise supplemental jurisdiction over pendent state claims. It provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)" in one of four specified circumstances. 28 USC § 1367(c).[3] One specified circumstance is when "the district court has dismissed all claims over which it has original jurisdiction." 28 USC § 1367(c)(3). In interpreting section 1367(c)(3), the federal courts have followed the general rule set out in *Gibbs* and *Carnegie-Mellon*; that is, when federal district courts have dismissed before trial the federal claims that gave rise to federal question jurisdiction, the courts generally have not exercised supplemental jurisdiction over any pendent state claims that a party has alleged. *See* Wright et al., 13D *Federal Practice and Procedure*, § 3567.3, 428-31 (describing

---

[2] In addition to recognizing in *Gibbs* that federal courts could exercise pendent jurisdiction over related state law claims, the Supreme Court also had recognized that federal courts could exercise ancillary jurisdiction over some counterclaims. *See* Wright et al., 13D *Federal Practice and Procedure* § 3567, 318-19 (describing decisions). The 1990 statute applies to both types of jurisdiction and groups them under the rubric of supplemental jurisdiction. *Id.*

[3] There has been some debate whether, after the enactment of 28 USC § 1367, a federal district court's discretion to decline to exercise supplemental jurisdiction is limited to the four circumstances specified in section 1367(c). *See* Wright et al., 13D *Federal Practice and Procedure* § 3567.3, 401-08. The resolution of that debate is not relevant to our decision because the federal action in this case falls squarely within one of the four circumstances that section 1367(c) specifies.

federal practice). In short, the 1990 legislation did not change the prior decisions in any way that bears on this case.

With that background in mind, we turn to this court's decision in *Rennie*, which considered claim preclusion before Congress enacted 28 USC section 1367 in 1990. The plaintiff in *Rennie* had brought an action in federal district court under the federal securities laws, tried his federal securities claims to a jury, and lost. 294 Or at 321-22. He then pursued state law claims arising out of the same transaction in state court. *Id.* In deciding whether claim preclusion barred the plaintiff's state action, this court began by quoting the following passage from the *Restatement*:

> " 'A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If, however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.' "

294 Or at 326 (quoting *Restatement (Second) of Judgments* § 25 comment e).

That passage from the *Restatement* states a general rule that, if a federal court could have exercised supplemental jurisdiction over a related state claim, the failure to raise the state claim along with the federal claim will bar a party from later seeking to litigate the state claim in state court. The *Restatement* also recognizes an exception to that general rule: When the federal court either clearly would have lacked jurisdiction over the related state claim or, having jurisdiction, clearly would have declined to exercise it, then claim preclusion does not bar the plaintiff from bringing the state claim in state court. To illustrate the distinction between the general rule and the exception, the *Restatement* explains that, if a party litigates a federal claim to judgment and fails

to raise a related state claim, claim preclusion will bar that party from later litigating the state claim. *Restatement* § 25 comment e, illus 10. However, if "the federal claim, though substantial, was dismissed in advance of trial," then claim preclusion will not bar litigating the state claim in state court. *Id.*

The facts in *Rennie* brought that case within the general rule. The plaintiff had litigated his federal securities claim to a jury and lost. This court explained that, in those circumstances:

> "the better rule * * * is that a plaintiff must attempt to have all claims against a defendant arising out of one transaction adjudicated in one court in one proceeding, at least insofar as possible, despite the fact that the various claims may be based on different sources of law."

*Id.* at 327. The court was careful, however, to "emphasize" that its holding did not foreclose applying the exception set out in the *Restatement* in an appropriate case. *Id.* at 327-28. It explained that the case before it was not one:

> "where the federal court, after a proper request, expressly declined to exercise pendent jurisdiction over the state law claim. *Nor is this a case where, due to the nature of the claims or the fact that the federal law claim was summarily dismissed, the federal court would have clearly declined to exercise pendent jurisdiction.*"

*Id.* at 327-28 (emphasis added; citation omitted).

This case presents the issue that this court did not have occasion to decide in *Rennie*—whether claim preclusion applies if the " 'court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion).' " *Rennie*, 294 Or at 326 (quoting *Restatement* § 25 comment e). On that point, defendants endorse the Court of Appeals' reasoning that, even if the *Restatement* was correct when it was adopted in 1982, Congress altered the legal landscape when it codified and expanded the doctrine of supplemental jurisdiction in 1990. As we understand defendants' argument, they contend that, in light of the expansion of supplemental jurisdiction in

1990, the rule stated in the *Restatement* is no longer good law.

In our view, Congress did not expand supplemental jurisdiction in 1990 in a way that undercuts the *Restatement*. As explained above, for the most part, Congress codified the decision in *Gibbs*. Specifically, it preserved the federal courts' discretion to decline to exercise supplemental jurisdiction over pendent state law claims. Of particular significance for this case, Congress preserved a district court's discretion to decline to exercise supplemental jurisdiction when that court has dismissed before trial the federal claims that gave rise to its jurisdiction. Far from changing the legal landscape, as defendants argue, Congress preserved the very point—the federal courts' discretion to decline to exercise supplemental jurisdiction—that gave rise to the exception stated in the *Restatement* and quoted in *Rennie*.[4]

That said, we have never explicitly relied upon the exception from the *Restatement*, which states that claim preclusion does not apply when the "court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion)." As noted, the facts in *Rennie* did not require this court to decide whether to follow that exception. This case presents that issue, and we see no reason not to follow the *Restatement*; that is, we see no reason why claim preclusion should apply when it is clear that the district court would have declined to exercise supplemental jurisdiction over any state-law claims that plaintiffs could have asserted. Barring plaintiffs from litigating their state law claims in that circumstance does not advance the principles of judicial economy that underlie the

---

[4] Defendants argue that we should follow what they describe as the "modern" rule set out in *McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 984 P2d 909, *rev den*, 329 Or 553 (1999). Defendants read *McAmis* for more than it is worth. The claim preclusion issue arose in *McAmis* in the same posture that it had in *Rennie*. The federal court in *McAmis* had tried the plaintiff's claim to completion; it had granted summary judgment in the plaintiff's favor and had awarded the plaintiff damages. *Id.* at 634. *McAmis* was not a case where the federal court dismissed the plaintiff's complaint before trial, and the court in *McAmis* did not address, nor did it purport to address, how claim preclusion would apply in that context. *See id.* at 637-41 (identifying and analyzing the "critical disagreement" between the parties as whether the state and federal claims arose out of same transaction).

doctrine of claim preclusion. Rather, it disserves those principles by denying plaintiffs any forum in which to vindicate their state rights.

To be sure, the rule that the Court of Appeals adopted and that defendants urge us to adopt avoids having state courts decide, in retrospect, how a federal court would have exercised its discretion if a plaintiff had sought to litigate his or her state claims under the doctrine of supplemental jurisdiction. But state courts are fully capable of making that determination. As noted in *Rennie* and the *Restatement,* the exception to claim preclusion applies only when a federal court, having jurisdiction, clearly would have declined to exercise it. If it is not clear that the federal court, having jurisdiction, would have declined to exercise it, then claim preclusion will bar any state law claim that a plaintiff could have but did not raise initially in federal court.[5]

Having concluded that the *Restatement* states the correct rule, we still must decide whether the district court would have had jurisdiction over plaintiffs' state law claims or, having jurisdiction, clearly would have declined to exercise it. On the first issue, plaintiffs note that the federal district court ruled that it lacked subject matter jurisdiction over plaintiffs' ERISA claims. They contend that that ruling is correct and that it necessarily follows that the district court also would have lacked supplemental jurisdiction over any pendent state law claims. Defendants respond that the district court dismissed plaintiffs' ERISA claims because plaintiffs had failed to state a claim for which relief could be granted. Defendants argue that, under established federal case law, the failure to state a claim leads to a dismissal on the merits, not a dismissal for lack of jurisdiction. In defendants' view, the district court erred in ruling that it lacked subject matter jurisdiction over plaintiffs' ERISA claim. It follows, defendants contend, that the district court also had supplemental jurisdiction over plaintiffs' state law claims.

---

[5] Although we decline to adopt the broad rule that defendants urge, we note that, when a plaintiff chooses to file in federal court, prudent counsel ordinarily will bring all federal and pendent state claims in that federal forum. Doing so removes any question whether the federal court would have declined to exercise its supplemental jurisdiction to hear the pendent state claims.

■ The United States Supreme Court has long recognized that, with two exceptions, a federal court has federal question jurisdiction when the complaint alleges that a claim arises under federal law but fails to state a claim for which relief may be granted. *Bell v. Hood*, 327 US 678, 682, 66 S Ct 773, 90 L Ed 939 (1946). The two exceptions to that rule are "[1] where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or [2] where such a claim is wholly insubstantial and frivolous." *Id.* at 682-83; *accord Arbaugh v. Y & H Corp.*, 546 US 500, 513 & n 10, 126 S Ct 1235, 163 L Ed 2d 1097 (2006). Only in those two instances may a federal court dismiss a complaint that fails to state a claim for relief for lack of jurisdiction. *Arbaugh*, 546 US at 513 n 10.

In this case, the district court did not rule that plaintiffs' claims came within either of the two exceptions noted in *Bell*, and defendants may well be correct that the district court erred in stating that it lacked subject matter jurisdiction over plaintiffs' ERISA claims. A potential difficulty for defendants, however, is that the district court ruled in its minute order and reaffirmed in its order resolving defendants' motion to clarify that it did not have jurisdiction over plaintiffs' ERISA claims. That jurisdictional ruling, even if erroneous, may be binding on defendants as a matter of issue preclusion. *See Durfee v. Duke*, 375 US 106, 111, 84 S Ct 242, 11 L Ed 2d 186 (1963) (holding that questions of subject matter jurisdiction are entitled to preclusive effect and thus full faith and credit where "those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment"). If issue preclusion requires us to assume that the district court lacked subject matter jurisdiction over plaintiffs' ERISA claims, then it necessarily follows that the district court also would have lacked supplemental jurisdiction to hear any pendent state claims, and claim preclusion would not bar plaintiffs' state court action.

■ However, we need not decide whether the question of subject matter jurisdiction was "fully and fairly litigated and finally decided" when defendants moved to clarify the district court's minute order. *See Durfee*, 375 US at 111

(stating that standard). Even if it were not and even if we assume that the district court had subject matter jurisdiction over plaintiffs' ERISA claims and thus had the power to exercise supplemental jurisdiction over any pendent state law claims, the record leaves no doubt that the district court would have declined to exercise supplemental jurisdiction over any state law claims that plaintiffs might have asserted. As noted, the United States Supreme Court explained in *Gibbs* that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 US at 726. Although *Gibbs* did not state an inflexible rule, it did identify the appropriate balance in the usual case "in which all federal-law claims are eliminated before trial." *Carnegie-Mellon Univ.*, 484 US at 350 n 7. Nothing in this record suggests that plaintiffs' federal action was not the usual case. Indeed, the district court dismissed plaintiffs' ERISA claims at the first stage of the litigation in response to defendants' FRCP 12(b)(6) motions.

Moreover, the district court understood that, as a result of its ruling on defendants' motions to dismiss, it lacked subject matter jurisdiction over plaintiffs' ERISA claims. Even if that understanding were incorrect, as defendants argue, we have no doubt that the district court would not have proceeded to exercise supplemental jurisdiction over any pendent state law claims if, as it concluded, it lacked subject matter jurisdiction over plaintiffs' ERISA claims. Because the record demonstrates that the district court would not have exercised supplemental jurisdiction over plaintiffs' state law claims, we conclude that claim preclusion does not bar plaintiffs from pursuing those claims in state court.

Defendants advance an alternative argument. They argue that, even if claim preclusion is not a bar, plaintiffs' state action is untimely. On that issue, the parties agree that the timeliness of plaintiffs' state action turns on ORS 12.220, which extends the statute of limitations when an action is dismissed. Specifically, the parties agree that, if ORS 12.220 applies, plaintiffs' state action is timely but that, if it does not apply, plaintiffs' state action is time barred. We turn to that issue.

ORS 12.220(1) provides, in part:

> "Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action * * *, the plaintiff may commence a new action based on the same claim or claims against a defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed."

ORS 12.220(2) provides that, if ORS 12.220(1) applies, a party has 180 days after the judgment in the first action is entered in which to file a new action.[6] In this case, the question whether ORS 12.220(1) applies reduces to two issues: (1) whether plaintiffs' federal action was "dismissed * * * on any ground not adjudicating the merits of the action" and (2) if it were, whether plaintiffs' state action is "based on the same claim or claims."[7]

Plaintiffs argue that the key to understanding why their claims come within the terms of ORS 12.220 lies in the federal district court's reasoning. That court held that the relief that plaintiffs sought—rescission of an employee benefit plan because of fraud in the inducement—is not available under ERISA. It followed, the district court reasoned, that plaintiffs' claim arose, if at all, under state law. Starting from the premise that they mistakenly filed a state fraud claim as

---

[6] The legislature amended ORS 12.220 in 2003, after plaintiffs filed their action in federal district court but before that court entered judgment in defendants' favor. Before 2003, ORS 12.220 (2001) provided, in part:

> "if an action is commenced within the time proscribed therefor and the action is dismissed upon the trial thereof, or upon appeal, after the time limited for bringing a new action, the plaintiff * * * may commence a new action upon such cause of action within one year after the dismissal or reversal on appeal."

In arguing whether ORS 12.220 applies, the parties assume, as do we, that we should look to the current version of ORS 12.220. Moreover, the difference turns out to be immaterial. As explained below, the legislature amended ORS 12.220 in 2003 to bring the words of ORS 12.220 (2001) in line with this court's decisions interpreting it, and both versions of the statute lead to the same answer in this case.

[7] Defendants do not dispute that plaintiffs' federal action was timely filed, nor do they dispute that the federal court dismissed plaintiffs' action involuntarily without prejudice. Finally, defendants do not dispute that plaintiffs commenced their state action within 180 days after the federal district court entered judgment. The dispute centers instead on the two phrases quoted above.

an ERISA claim, plaintiffs contend that the district court did not "adjudicat[e] the merits" of the state law fraud claim that they pled in federal court. It also follows from that premise, they argue, that they are alleging the same fraud claim in state court that they incorrectly attempted to bring as an ERISA claim in federal court.

Defendants respond that the district court adjudicated the merits of plaintiffs' federal action when it ruled that their complaint failed to state a claim for relief under ERISA. They reason that, "[u]nder the governing federal law, dismissal of a claim for failure to state a claim constitutes a decision on the merits" and that federal law controls whether the district court's dismissal of plaintiffs' federal action is an "adjudicati[on of] the merits" for the purposes of ORS 12.220. Additionally, defendants argue that, because the elements of an ERISA claim differ from the elements of a fraud claim, the fraud claim that plaintiffs have alleged in state court is not the "same claim" that they alleged in federal court.[8]

We begin with the question whether plaintiffs' federal action was "dismissed * * * on any ground not adjudicating the merits." ORS 12.220(1). We note, as an initial matter, that defendants' reliance on federal law is misplaced. The question whether the federal court "adjudicat[ed] the merits" of plaintiffs' action for the purposes of ORS 12.220 presents a question of state law. The federal cases on which defendants rely (*Bell* and its progeny) address when the failure to state a claim for relief under federal law will result in the lack of federal jurisdiction. Those federal cases do not purport to identify the line that the Oregon legislature drew in enacting ORS 12.220; that is, the federal cases do not purport to decide which dismissals constitute an "adjudicati[on of] the merits" that will preclude a party from seeking an extended limitations period under ORS 12.220. The answer to that question lies in an examination of the text, context, and, if appropriate, the legislative history of ORS 12.220.

---

[8] The parties assume, and we agree, that the phrase "if an action is filed with a court" in ORS 12.220 includes actions filed in a federal court. Not only is the phrase "a court" broad enough to include federal as well as state courts, but this court had held that the prior version of ORS 12.220 applied to an action filed initially in federal court. *Hatley v. Truck Insurance Exchange*, 261 Or 606, 494 P2d 426, 495 P2d 1196 (1972).

The phrase "dismissed * * * on any ground not adjudicating the merits of the action" describes a category of dispositions. In many cases, the question whether a dismissal adjudicates the merits will be fairly straightforward. For example, a dismissal for lack of subject matter jurisdiction does not adjudicate the merits of an action while a directed verdict does. *Compare Hatley v. Truck Insurance Exchange*, 261 Or 606, 613, 494 P2d 426, 495 P2d 1196 (1972) (holding that ORS 12.220 (2001) applied when the first action was dismissed for lack of subject matter jurisdiction), *with White v. Pacific Tel. & Tel. Co.*, 168 Or 371, 375, 123 P2d 193 (1942) (holding that ORS 12.220 (2001) did not apply when the first action went to trial and a directed verdict was entered in favor of the defendants).

This case presents a closer question, however. In this case, plaintiffs brought an action under ERISA to rescind an employee benefit plan because of fraud in the inducement. The district court dismissed their action because their complaint did not state a claim under ERISA; their claim arose, if at all, under state law. Viewed from one perspective, the district court's ruling adjudicated the merits of the ERISA claim that plaintiffs sought to allege. Viewed from another perspective, the district court did not adjudicate the merits of the state claim that plaintiffs actually alleged. Rather, the district court ruled that the state law claim that plaintiffs in fact alleged did not provide an independent basis for federal jurisdiction.

■     The text of ORS 12.220, standing alone, does not provide clear guidance in deciding which perspective is consistent with the legislature's intent, and we turn to the statute's context. *See Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (considering text and context at the first level of analysis). Context includes " 'the preexisting common law and the statutory framework within which the law was enacted.' " *Id.* (quoting *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998)). In this case, the earlier version of ORS 12.220 and the cases interpreting it provide more guidance. As noted, ORS 12.220 (2001) provided that, if an "action is dismissed upon the trial thereof, or upon appeal, after the time limited for bringing a new action, the plaintiff * * * may

commence a new action upon such cause of action within one year after the dismissal or reversal on appeal."

In interpreting ORS 12.220 (2001), this court explained that the phrase "dismissed upon the trial thereof" did not mean as much as it might appear to say. Rather, it meant:

"dismissed without a trial upon the merits, such as in a case when judgment of nonsuit is given, or when an action is dismissed for want of prosecution or for want of jurisdiction, and the like, and it has no application to a judgment entered after a trial upon the merits."

*White*, 168 Or at 375. The court reasoned that, if it interpreted the phrase "dismissed upon the trial thereof" to include a "judgment entered after a trial upon the merits," then that interpretation "would result in the entire destruction of the rule of res adjudicata and permit the plaintiff to litigate the same cause of action as against the same parties without end." *Id.*; *see Tikka v. Martin*, 271 Or 287, 292-93, 532 P2d 18 (1975) (following *White*).[9] The court also observed that the word "dismissed," as it was used in ORS 12.220 (2001), "signifies a final ending of the action, not a final judgment on the controversy, but an ending of that particular proceeding." *White*, 168 Or at 376. The court thus interpreted the phrase "dismissed upon the trial thereof" in ORS 12.220 (2001) as applying only to dismissals that did not preclude another action on the same claim or claims.[10]

---

[9] It may not have been necessary for the court in *White* to look to the purposes underlying claim preclusion to interpret the scope of a statute extending the limitations period. The two doctrines serve different purposes, and claim preclusion independently would provide a complete defense even if ORS 12.220 (2001) provided an extended statute of limitations. The court, however, linked the two doctrines in *White*, later decisions have followed that aspect of *White*, and the 2003 legislature's use of the phrase "not adjudicating the merits of an action" appears to derive from *White*'s reasoning.

[10] Later decisions refined some aspects of *White* and held that ORS 12.220 (2001) did not apply when an action was dismissed for want of prosecution or when a plaintiff took a voluntary nonsuit before trial. *See Fuller v. Safeway Stores*, 258 Or 131, 133-34, 481 P2d 616 (1971) (dismissal for want of prosecution); *Haworth v. Ruckman*, 249 Or 28, 29-30, 436 P2d 733 (1968) (voluntary nonsuit before trial). In *Hatley*, this court explained that the holding in *Fuller* reflected policy considerations while the holding in *Haworth* derived from considerations unique to nonsuits. 261 Or at 613 n 1.

That context sheds light on the text of ORS 12.220 in two respects. First, the legislature continued to use the word "dismissed" when it amended ORS 12.220 in 2003, implying that ORS 12.220, as amended, applies to dispositions that resolve an action but do not have a final or preclusive effect. *See White*, 168 Or at 376 (explaining the meaning of dismissed). Second, when the legislature provided in 2003 that ORS 12.220 applies to an action "dismissed * * * on any ground not adjudicating the merits," the wording harkens back to the rule from *White* that ORS 12.220 (2001) did not apply to a "judgment entered after a trial upon the merits"— the line that the court drew in *White* to prevent extending the statute of limitations to actions barred by claim preclusion. 168 Or at 375. That context implies that the current wording of ORS 12.220 applies, as ORS 12.220 (2001) did, only to dismissals that do not result in claim preclusion.

We also consider the legislative history of the 2003 amendments to ORS 12.220. *See State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009) ("Legislative history may be used to confirm seemingly plain meaning and even to illuminate it * * *."). The Oregon Law Commission proposed amendments to ORS 12.220 in 2003, and Professor Maury Holland testified before the legislature on behalf of the Commission. Holland explained that one of the problems with ORS 12.220 (2001) was that it "does not say what it means" and that one of the purposes of the proposed amendments was to bring the wording of the statute in line with the decisions interpreting it. Testimony, Senate Judiciary Committee, HB 2284, May 12, 2003, Ex E (statement of Maury Holland).

Holland also submitted the Commission's report on the proposed amendments to ORS 12.220 to the legislature. The report mirrors, in large part, the reasoning in *White*. The report explains that

"[t]he basic premise of a saving statute is that if an action is dismissed without prejudice on some ground not adjudicating its substantive merits and thus not giving rise to claim preclusion, the plaintiff should be entitled to reinstitute the same claim or claims against the same defendant or defendants in a new action."

Oregon Law Commission Report, Senate Judiciary Committee, HB 2284, May 12, 2003, Ex D at 2. Later, the report states that ORS 12.220, as amended, "is intended to apply in any case where dismissal without prejudice of the original action is on a procedural ground not adjudicating the merits." *Id.* at 3.[11] No one testified in opposition to the bill, and the House and Senate Judiciary Committees voted to submit the bill to their respective houses without further discussion and with a "do pass" recommendation.

The witness's explanation of the bill is consistent with conclusion that we draw from statute's context. The phrase "dismissed * * * on any ground not adjudicating the merits" reaffirms the basic principle recognized in *White* and later cases: the statute applies only to dismissals that do not result in claim preclusion. To be sure, the legislative history does not address the specific problem that this case presents—whether ORS 12.220 applies when a plaintiff in a federal court action alleges that a claim arises under federal law when the claim arises, if at all, only under state law. As noted, in those situations, the federal court order dismissing the action adjudicates the federal claim that the plaintiff sought to plead but not the state claim that the plaintiff in fact pled. However, the principle that *White* recognized and that ORS 12.220, as amended, incorporates provides an answer to that problem; that is, if claim preclusion does not bar the plaintiff from bringing the state claim in state court, then the federal court's dismissal did not "adjudicat[e] the merits" of the state claim that the plaintiffs incorrectly brought as a federal claim in federal court.

In this case, we have concluded that the federal district court would have declined to exercise supplemental jurisdiction over plaintiffs' state law claims if plaintiffs had raised them in federal court. Two propositions follow from that holding. First, claim preclusion does not bar plaintiffs from pursuing those same state claims in state court. Second, this is not a case in which the district court's ruling on plaintiffs' ERISA claim adjudicated the merits of their state fraud

---

[11] As we understand the legislative history, it refers to dismissals based on procedural grounds as a shorthand way of referring to rulings dismissing a case that do not result in claim preclusion.

claims. This case is, instead, precisely the type of case to which ORS 12.220 was intended to apply.

■ Defendants raise a second issue regarding ORS 12.220. They argue that plaintiffs' state action is not "based on the same claim or claims" as their federal action. *See* ORS 12.220 (stating that requirement). The word "claim" is a term of art, and a legal dictionary defines a "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court." *Black's Law Dictionary* 264 (2004); *see Dean v. Exotic Veneers, Inc.*, 271 Or 188, 193, 531 P2d 266 (1975) (stating that, for the purposes of claim preclusion, a claim is " 'an aggregate of operative facts giving rise to a right or rights termed "right" or "rights of action" which will be enforced by the courts' " (quoting *Clark on Code Pleading* 472-78 (2d ed 1947))); *Elliott v. Mosgrove*, 162 Or 507, 545, 552, 91 P2d 852, 93 P2d 1070 (1939) (endorsing similar definition of a claim for relief for the purposes of determining whether trial court erred in permitting an amendment to the complaint).[12] In this case, plaintiffs pled the same aggregate set of operative facts in both state and federal court. It is true, as defendants argue, that plaintiffs alleged in federal court that those facts gave rise to a claim under ERISA while they alleged in state court that those facts give rise to a fraud claim. However, as the federal district court recognized, the problem with plaintiffs' ERISA claim was that they had alleged, at most, a state law claim for fraud in federal court.

Here, defendants were on notice in the federal action of the nature of plaintiffs' claims, and we conclude that, in the context of ORS 12.220, plaintiffs' state action is based on the "same claim" that plaintiffs pled in the federal action. *See* Oregon Law Commission Report, Senate Judiciary Committee, HB 2284, May 12, 2003, Ex D at 2-3 ("[I]f a defendant had actual notice of the original, dismissed action, * * * that notice fulfills the basic purpose of limitations periods by alerting the defendant that a given claim is, or claims are, being asserted against that defendant * * *."). Because the

---

[12] In both *Dean* and *Elliott*, this court recognized that the definition of a claim for relief, which they termed a cause of action, will vary depending on the context in which that phrase is used. *See Dean*, 271 Or at 192 (describing the phrase as a "slippery" one that varies with its context); *Elliott*, 162 Or at 544 (quoting a federal decision for the same proposition).

extended statute of limitations in ORS 12.220 applies, plaintiffs' state action is timely.

Accordingly, we reverse the Court of Appeals decision upholding the trial court's judgment dismissing plaintiffs' action. Because, as noted, some defendants have raised cross-assignments of error that the Court of Appeals did not reach, we remand this case to the Court of Appeals so that it can consider those cross-assignments of error.

The decision of the Court of Appeal is reversed, and the case is remanded to the Court of Appeals for further proceedings.