Argued and submitted July 23, affirmed October 17, petition for reconsideration of plaintiffs-appellants Ram Technical Services, Inc., Charles Stalnaker and Susan Stalnaker filed November 28, defendants-respondents/cross-appellants John J. Koresko; Ram Technical Services Voluntary Employees' Beneficiary Association; Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association; and Penn-Mont Benefit Services, Inc.'s, response to plaintiffs-appellants' petition for reconsideration filed December 5, and respondent Great Southern Life Insurance Company's response to appellants' petition for reconsideration filed December 12, 2007, allowed by opinion January 23, 2008

See 217 Or App 463, _____ P3d _____ (2008)

RAM TECHNICAL SERVICES, INC.,
an Oregon corporation;
Charles Stalnaker; and Susan Stalnaker,
*Plaintiffs-Appellants*
*Cross-Respondents,*

*v.*

John J. KORESKO;
Ram Technical Services Voluntary
Employees' Beneficiary Association;
Regional Employers' Assurance Leagues Voluntary
Employees' Beneficiary Association;
and Pennmont Benefit Services, Inc.,
a Pennsylvania corporation,
*Defendants-Respondents*
*Cross-Appellants,*

*and*

GREAT SOUTHERN LIFE INSURANCE COMPANY,
a Texas corporation;
The Corben Educational Services, Inc.,
an Oregon corporation;
and Thomas W. Crosswhite,
*Defendants-Respondents.*

Clackamas County Circuit Court
CV04100199; A130143

171 P3d 374

450

Craig J. Capon argued the cause for appellants-cross-respondents. With him on the briefs were Karla Alderman, Arden J. Olson, and Harrang Long Gary Rudnick P.C.

Scott J. Kaplan argued the cause for respondents-cross-appellants. With him on the briefs were Charles F. Adams and Stoel Rives LLP.

R. Daniel Lindahl argued the cause for respondent Great Southern Life Insurance Company. With him on the brief were Lisa E. Lear and Bullivant Houser Bailey PC, and Andrew C. Hanan and Conrad O'Brien Gellman & Rohn, Philadelphia.

Lee Wyatt argued the cause for respondents The Corben Educational Services, Inc., and Thomas W. Crosswhite. With him on the brief was LAWyatt, LLC.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs appeal, challenging the dismissal on summary judgment, ORCP 47 B, of their common-law fraud claim against defendants as being barred by claim preclusion arising from the determination of prior federal litigation between the parties or, alternatively, by the expiration of the statute of limitations.[1] As amplified below, we conclude that, because plaintiffs could have raised their common-law claims in their federal litigation, they are precluded from litigating those claims in state court. Accordingly, we affirm.[2]

The operative facts for purposes of our review are uncontroverted. On July 2, 2003, plaintiffs filed an action against defendants in the United States District Court for the District of Oregon. In their complaint, plaintiffs pleaded, *inter alia*, claims for "rescission" and "constructive trust" based on purported misrepresentations that induced plaintiffs, in 2000, to establish a "voluntary employee benefits association" (VEBA) benefit plan for employees of plaintiff Ram Technical Services, Inc., and to purchase life insurance policies as a means of funding the VEBA plan. In particular, plaintiffs alleged that they had been told by certain defendants that they would not be required to make annual contributions to sustain the plan; however, by no later than June 11, 2002, plaintiffs first learned that those representations were false and that they were, in fact, required to make

---

[1] Three groups of defendants appeared separately before the trial court and on appeal: (1) John J. Koresko, Ram Technical Services Voluntary Employees' Beneficiary Association, Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association, and Penn-Mont Benefit Services, Inc., a Pennsylvania corporation (the "VEBA defendants"); (2) Great Southern Life Insurance Company ("Great Southern"); and (3) The Corben Educational Services, Inc., and Thomas W. Crosswhite (the "Corben and Crosswhite defendants"). "Defendants" in this opinion refers to all defendants.

[2] Given our analysis and disposition, we do not address whether the statute of limitations also and independently barred the prosecution of this action. Further, for the same reasons, we need not, and do not, address either a cross-assignment of error raised by the Corben and Crosswhite defendants or the VEBA defendants' miscast "cross-appeal," which merely advances alternative bases for affirming the dismissal, which the trial court rejected, and "does not seek to reverse or modify the judgment on appeal." *See* ORAP 5.57(2)(a) (defining, in part, characteristics of a cross-assignment of error). *See generally Austin and Austin*, 191 Or App 307, 322 n 1, 82 P3d 170 (2003) (generally describing functional difference between cross-appeals and cross-assignments of error).

annual payments. Plaintiffs further alleged that the VEBA plan was "an employee welfare benefit plan created pursuant to the provisions of the Employee Retirement Income Security Act of 1974" (ERISA) and that, given defendants' misrepresentations and other conduct, plaintiffs were entitled to rescission, because "[r]escission of an ERISA plan, the formation of which was induced by fraud, is 'appropriate equitable relief' under 29 USC § 1132(a)(3)(B)." Based on the same allegations, plaintiffs also sought the imposition of a constructive trust for "funds [that] arose from Plaintiffs' payments."

Defendants moved for dismissal of those claims on a variety of grounds, including failure to state a claim, FRCP 12(b)(6). In April 2004, the district court granted defendants' motions to dismiss. In its "Opinion and Order," the district court described the gravamen of plaintiffs' claims and defendants' grounds for seeking dismissal pursuant to FRCP 12(b)(6):

> "Plaintiffs bring suit under 29 U.S.C. § 1132(a)(3), which authorizes a civil action 'by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]'

> "Defendants argue that plaintiffs fail to state a claim under this statute, because the plaintiffs neither seek to 'enjoin any practice' that violates ERISA or the benefits plan, nor do they request equitable relief to redress an ERISA violation or a term of the plan. Rather, plaintiffs ask this court to rescind an entire benefits plan that the plaintiffs allegedly were fraudulently induced into forming based on misrepresentation about the required payment schedule."

*Ram Technical Services v. Koresko*, No. 03-6163-AA (D Or Apr 15, 2004).

The district court observed that "[t]he key issue before the court * * * is whether § 1132, which is designed generally to enforce plan benefits and provisions of ERISA, can govern a dispute about whether a formation defect

vitiates a putative agreement establishing a benefits plan." Ultimately, the court answered that question in the negative:

> "I find that the type of breach alleged by plaintiffs is not the type that § 1132 seeks to redress. Because the alleged formation defect would preclude the existence of any 'plan' that might have been governed by ERISA, the plaintiffs do not state a claim for enforcement of a term of their plan. * * *

> "Moreover, plaintiffs have provided no authority demonstrating that defendants' alleged fraudulent inducement violates an 'ERISA provision.' To the contrary, many courts have determined that ERISA does not apply to a claim of fraud in the inducement, which occurs before the establishment of a benefits plan and may be redressed under state common law principles. * * *

> "Finally, the plaintiffs seek a type of equitable relief that is not available under the statute. The statute allows equitable relief only to 'redress [plan] violations or * * * enforce any provisions [of ERISA] or the plan.' 29 U.S.C. § 1132. As explained above, plaintiffs do not seek to redress either type of breach."

For various reasons, which are immaterial to our disposition, the district court did not immediately enter a judgment of dismissal. On February 28, 2005, the court issued a minute order memorializing the dismissal of the federal action.

Meanwhile, on October 11, 2004, six months after the district court granted defendants' motions to dismiss—and two years and four months after plaintiffs learned that defendants' representations were false—plaintiffs filed this action in Clackamas County Circuit Court. Plaintiffs' complaint alleged claims of fraud and "constructive trust" that were based on the same circumstances, specifically, defendants' alleged misrepresentations and plaintiffs' alleged detrimental reliance on those representations, which were the bases of plaintiffs' claims in the federal litigation. Indeed, the allegations of the parties' conduct were a virtual "cut-and-paste" of the parallel, operative allegations in the federal court complaint, and the allegations of the federal and state court "constructive trust" claims were, except for a reference in the former to "appropriate equitable relief" under ERISA, identical.

Defendants subsequently moved for summary judgment on a variety of grounds, including statute of limitations

and, as particularly pertinent here, claim preclusion.[3] The thrust of defendants' claim preclusion argument was that plaintiffs' common-law fraud claim could have been brought, by way of supplemental jurisdiction, in the federal litigation and that no recognized exception to claim preclusion applied in these circumstances. Those contentions, in turn, implicated a variety of matters, which the parties disputed, including (1) the proper application of Oregon authority addressing, for claim preclusion purposes, whether pendent claims should reasonably have been asserted in the prior federal litigation;[4] (2) the likelihood that the federal court would have retained a pendent state law fraud claim following dismissal of a predicate ERISA-based claim; and (3) the significance, if any, with respect to exceptions to claim preclusion, of certain remarks by defense counsel and by the trial judge during the federal proceedings.

The circuit court allowed summary judgment against plaintiffs' fraud claim on alternative grounds of claim preclusion and statute of limitations,[5] and also dismissed plaintiffs' other claims.[6]

---

[3] The summary that follows is greatly simplified and synthesized. The VEBA defendants and the Corben and Crosswhite defendants initially unsuccessfully moved for dismissal on a variety of grounds under ORCP 21 A. Thereafter, the VEBA defendants and Great Southern successfully moved for summary judgment, and, finally, the Corben and Crosswhite defendants successfully moved for summary judgment. The parties' motions and memoranda were voluminous, with variations that are ultimately immaterial to our analysis. Thus, what follows is, in substance, a "composite" description.

[4] Compare *Rennie v. Freeway Transport*, 294 Or 319, 656 P2d 919 (1982), and *McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 984 P2d 909, *rev den*, 329 Or 553 (1999), *with Ron Tonkin Gran Turismo v. Wakehouse Motors*, 46 Or App 199, 611 P2d 658, *rev den*, 289 Or 373 (1980).

[5] With respect to the statute of limitations, defendants' argument was straightforward: Under ORS 12.110(1), the statute of limitations for fraud is two years from the date of discovery, and this action was commenced two years and four months after plaintiffs discovered defendants' alleged fraud. In response, plaintiffs acknowledged that, for purposes of summary judgment, this action had been commenced more than two years from the date of discovery. However, plaintiffs invoked ORS 12.220. Plaintiffs contended that that "savings" provision applied because (a) the common-law fraud claim alleged in this action was "the same claim" alleged in the federal litigation, ORS 12.220(1), and (b) the claims in the federal court action had been "involuntarily dismissed without prejudice on [a] ground not adjudicating the merits of the action." *Id*. The trial court concluded that, in the circumstances here, ORS 12.220 was inapposite and, thus, plaintiffs' common-law fraud claim was time-barred.

[6] One circuit court judge allowed the VEBA defendants' and Great Southern's motions for summary judgment. Thereafter, a second circuit court judge allowed

Plaintiffs appeal. Before addressing the substance of their arguments, we emphasize two considerations that frame our analysis. *First,* plaintiffs' arguments pertain solely to dismissal of their fraud claim. That is, plaintiffs advance no distinct analysis pertaining to their "constructive trust" claim, perhaps because they understand the two to be inextricably intertwined. *Second,* claim preclusion and statute of limitations are alternative and independently sufficient grounds for dismissal of the fraud claim. Thus, if we affirm the trial court on one ground, we need not address the other.

We conclude for the reasons that follow that claim preclusion barred the prosecution of plaintiffs' common-law fraud claim. Specifically, given the broad application and availability of supplemental jurisdiction, plaintiffs' fraud claim could and should reasonably have been asserted in the prior federal litigation.

■ In general, the doctrine of claim preclusion, the modern form of *res judicata,* acts to preserve the finality of judgments, prevent parties from relitigating the same issues in different suits, and avoid contradictory judgments from different courts. *Federated Department Stores, Inc. v. Moitie,* 452 US 394, 398, 101 S Ct 2424, 69 L Ed 2d 103 (1981); *Headwaters Inc. v. U.S. Forest Service,* 399 F3d 1047, 1051-57 (9th Cir 2005); *Drews v. EBI Companies,* 310 Or 134, 140, 795 P2d 531 (1990).

■ ■ We begin by noting that a judgment's preclusive effect is determined by reference to the law of the jurisdiction in which that judgment was rendered. *Aguirre v. Albertson's, Inc.,* 201 Or App 31, 46, 117 P3d 1012 (2005). Where a federal court decides the initial case, federal law controls the extent to which that judgment will preclude subsequent actions. *Heck v. Humphrey,* 512 US 477, 488 n 9, 114 S Ct 2364, 129 L Ed 2d 383 (1994) ("State courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law."). As we noted in *Aguirre,* however, "[a]s a practical matter, * * * preclusion principles

---

the Corben and Crosswhite defendants' motion for summary judgment, treating the previous allowance of summary judgment for the other defendants on the same grounds as "law of the case."

'as expounded in state and federal courts' often reflect few or no differences, so that it is 'usually a moot question whether the effect of a federal judgment is determined by federal law or state law.'" 201 Or App at 46 (quoting *Restatement (Second) of Judgments* § 87 comment a (1982)). Consequently, "in an exercise of caution," *id.* at 46 n 17, we cite both Oregon and federal authorities in our discussion of claim preclusion.

■■   Under both federal and Oregon precedent, a claim is precluded if (1) the prior litigation involved the same parties, (2) the case concerned issues arising out of the same transactions, (3) the case proceeded to a final judgment, and (4) the claims in the second case "could have been joined in the first action." *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982); *Drews*, 310 Or at 140; *McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 640-41, 984 P2d 909, *rev den*, 329 Or 553 (1999); *Aguirre*, 201 Or App at 46-48. Plaintiffs do not dispute that the first three of those requisites of claim preclusion are satisfied here. Rather, plaintiffs focus on the fourth element and contend that claim preclusion is inapplicable because they could not reasonably have asserted their common-law fraud claims in the federal litigation. As support for that proposition, plaintiffs invoke our opinion in *Ron Tonkin Gran Turismo v. Wakehouse Motors*, 46 Or App 199, 611 P2d 658, *rev den*, 289 Or 373 (1980).

Plaintiffs' invocation of *Ron Tonkin Gran Turismo* implicates an ostensible tension in our decisions applying the "could have been brought" component of claim preclusion to claims that were subject to a federal court's exercise of supplemental (aka "pendent") jurisdiction.[7] *Compare Ron Tonkin Gran Turismo*, 46 Or App at 205-07 (claims not precluded because it was unlikely that federal court in prior proceeding would have exercised pendent jurisdiction over that claim) *with McAmis Industries*, 161 Or App at 641 (mere possibility that federal court would have declined to exercise

---

[7] Originally known as "pendent jurisdiction," in 1990 Congress substituted the name "supplemental jurisdiction" when it passed Pub L 101-650, title III, § 310(a), 104 Stat 5113, codified at 28 USC § 1367, which authorizes federal courts to hear claims that have no independent federal basis if they are sufficiently related to federal claims over which the federal court does have original jurisdiction.

supplemental jurisdiction over claims did not excuse party from at least attempting to raise the claims in prior federal proceeding). As we will explain, the difference in those holdings reflects the pragmatically driven development of concepts of supplemental jurisdiction and claim preclusion over the last quarter-century. *McAmis Industries* comports with the later, more expansive approaches.

We begin with *Ron Tonkin Gran Turismo*. There, the plaintiff initially brought an action in federal court alleging antitrust claims based on federal law. The district court granted summary judgment against those claims and, while its federal appeal was pending, the plaintiff filed an action in state court, alleging claims, based on the same operational facts, for interference with present contract and prospective business relationships. 46 Or App at 201. The trial court entered a judgment for the plaintiff on the "prospective contract" claim, and the defendants appealed. We ultimately reversed the judgment, concluding that the plaintiff had failed to prove an actionable "improper purpose," *id.* at 210-12, but before doing so, we rejected the defendants' threshold contentions that claim preclusion barred the prosecution of the state-law claims.

We began by observing that, given the scope of pendent jurisdiction described in *United Mine Workers of America v. Gibbs*, 383 US 715, 86 S Ct 1130, 16 L Ed 218 (1966), the federal court would have had the power to adjudicate the plaintiff's claim for interference with a prospective business relationship. *Ron Tonkin Gran Turismo*, 46 Or App at 205. Additionally, we went on to emphasize that "[p]endent jurisdiction is always a matter of discretion," and that federal courts routinely declined to retain pendent claims after rendering summary judgment against federal claims—that is, after summarily dismissing the federal "hook" for pendent jurisdiction, the federal courts would dismiss the pendent state claims without prejudice, so they could be prosecuted in state court. *Id.* at 205-06. Echoing the analysis of a California appellate court, *see Merry v. Coast Community College Dist.*, 97 Cal App 3d 214, 158 Cal Rptr

603 (1979), we concluded that, although, as an abstract matter, the state claim could have been raised in the federal litigation by way of pendent jurisdiction, the failure to do so was not preclusive "because, once the federal claim was dismissed, it was clear that the federal court would have declined to exercise jurisdiction over the state claims." *Ron Tonkin Gran Turismo*, 46 Or App at 206.

In *McAmis Industries*, the plaintiffs filed concurrent actions in federal and state courts, each of which raised claims arising from a series of connected transactions, 161 Or App at 633-34; however, in the former, the plaintiffs raised only claims based on federal law, and, in the latter, they raised only claims based on state law. *Id.* at 633. After the federal district court entered judgment for the plaintiffs and while an appeal was pending, the defendants moved to dismiss the state court action on the ground of claim preclusion. The trial court denied that motion, and later entered a judgment for the plaintiffs. *Id.* at 634-35.

On appeal, we reversed, holding that claim preclusion barred the prosecution of the state court litigation. As pertinent here, we concluded that the state claims "could have been joined" in the federal proceeding:

"The federal courts have supplemental jurisdiction over state claims that are 'so related' to the federal claims before them 'that they form part of the same case or controversy.' 28 USC § 1367a (1194) [*sic*]. A federal district court may decline such jurisdiction only if the state law claim is predominant, if it is novel or complex, if all federal claims have been dismissed, or if other 'compelling' reasons exist. 28 USC § 1367c (1994); *Executive Software v. U.S. Dist. Ct.*, 24 F3d 1545, 1555-56 (9th Cir 1994). However, it need not do so *sua sponte. Acri v. Varian Associates, Inc.*, 114 F3d 999, 1000 (9th Cir 1997).

"The state claims arising out of the Port of Portland project fulfill the federal statutory requirement for supplemental jurisdiction. *The fact that the federal court might have refused to exercise that jurisdiction, had it found cause under section 1367c, did not excuse plaintiff from the requirement that it attempt joinder. Rennie*, 294 Or at 327

(plaintiff 'must attempt to have all claims against a defendant arising out of one transaction adjudicated in one court in one proceeding'). Plaintiff did not make such an attempt."

*McAmis Industries*, 161 Or App at 641 (emphasis added).[8]

Thus, the operative principle in *McAmis Industries* is that, even if there is a possibility—or even a substantial likelihood—that a federal court will decline to exercise supplemental jurisdiction over a state claim following its adjudication of federal claims, a party must, to avoid claim preclusion, at least "attempt joinder" in the federal litigation. The "worst" that could occur would be that the federal court will, in fact, decline to exercise supplemental jurisdiction and will dismiss the nonfederal claims without prejudice—which, of course, would have no claim preclusive effect.

That expansive and inclusive approach comports with the evolution of federal law on the proper relationship between supplemental jurisdiction and claim preclusion. The most important development in that federal jurisprudence has been in the broadening of federal supplemental jurisdiction, allowing more state claims to remain in federal court. *See* 28 USC § 1367 (2000) (giving federal courts discretion to retain supplemental jurisdiction over state claims in most situations); *Carnegie-Mellon Univ. v. Cohill*, 484 US 343, 108 S Ct 614, 98 L Ed 2d 720 (1988). Since the Supreme Court decided *Cohill* in 1988 and Congress added the supplemental jurisdiction statute in 1990, 28 USC § 1367, federal courts have broader discretion to retain jurisdiction over state claims than under the *Gibbs* approach, on which we relied in *Ron Tonkin Gran Turismo*.

In *Cohill*, the Court emphasized that "the pendent jurisdiction doctrine is designed to enable [federal] courts to handle cases involving state-law claims in a way that will

---

[8] In so holding, we noted the "striking factual similarities" with *Rennie*, *McAmis Industries*, 161 Or App at 641, where the plaintiff pursued concurrent actions, based on the same factual transactions, in federal court for federal security fraud and in state court for common-law fraud. 294 Or at 321. The Supreme Court held that entry of judgment for the defendants following a trial in the federal action precluded the state claims because those claims could have been raised by way of pendent jurisdiction in the federal action. *Id.* at 325-28.

best accommodate the values of economy, convenience, fairness, and comity," and thus a court may retain jurisdiction to hear state claims even when no federal claims remain. *Cohill*, 484 US at 351. Congress has codified that expansive approach to supplemental jurisdiction by explicitly giving federal trial courts discretion to retain state claims even when "the district court has dismissed all claims over which it has original jurisdiction." 28 USC § 1367(c)(3). So long as the federal court had original jurisdiction over some part of the initial claim, it is up to the trial court as to whether it will decide the state claims that are "part of the same case or controversy." 28 USC § 1367(a).

In sum, as we recognized in *McAmis Industries*, broadened supplemental jurisdiction rules not only allow plaintiffs to litigate both state and federal issues at once in federal court, but they also compel plaintiffs to assert all of their transactionally related claims in a single federal forum—or risk losing them to claim preclusion. *Headwaters Inc.*, 399 F3d at 1051-57.

Plaintiffs remonstrate that, even if *McAmis Industries* accords with the current state of federal law, the reasoning in *Ron Tonkin Gran Turismo* remains compelling here because of the unique relationship between their federal and common-law claims, *viz.*, that ERISA provides an exclusive remedial scheme, preempting all common-law claims that fall within its scope. 29 USC § 1144(a); *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F3d 1212, 1216 (9th Cir 2000). In plaintiffs' view, the mutual exclusivity between the theories of recovery made their state law claims irrelevant in federal court: Either plaintiffs would succeed under ERISA, in which case the state claims would be preempted, or the district court would reject the federal question claim and would then decline to exercise supplemental jurisdiction over the related state claims. In either event, plaintiffs reason, the federal court would never reach their state claims, and thus, under *Ron Tonkin Gran Turismo*, they should be excused from even attempting to join those claims.

Plaintiffs' reliance on *Ron Tonkin Gran Turismo* is unavailing. Even assuming the continued vitality of *Ron Tonkin Gran Turismo*'s formulation that claim preclusion is

inapposite if "once the federal claim was dismissed, it was clear that the federal court would have declined to exercise jurisdiction over the state claim," 46 Or App at 206, it is by no means "clear" here that the federal court would have dismissed a common-law fraud claim if it had been asserted in the federal action. Again, the law governing federal supplemental jurisdiction has undergone significant changes since *Ron Tonkin Gran Turismo*, and the mutual exclusivity of claims no longer means that a federal court must or is even likely to dismiss pendent state claims. Rather, the expansive exercise of supplemental jurisdiction dictates that all claims, including mutually exclusive claims, be joined and, at least potentially, be subject to adjudication in one forum.

In that regard, as we explained in *Aguirre*, "claim preclusion prevents relitigation of the same or related claims in order to protect adversaries from the expense and vexation attending multiple lawsuits as well as to conserve judicial resources and minimize the possibility of inconsistent decisions." 201 Or App at 48 (internal quotations omitted). If, as plaintiffs contend, they were entitled to "split" their mutually exclusive claims, the potential for inconsistent determinations in different fora is patent. For example, depending on timing and other circumstances material to issue preclusion, the federal court could decide that ERISA did not apply, depriving plaintiffs of a federal remedy, while the state court could simultaneously decide that ERISA *did* apply, thus preempting the common-law claims. Conversely, a defendant hauled into state and federal court on parallel, but mutually exclusive, claims could face double liability.

We thus conclude that plaintiffs reasonably could have brought their common-law claims in the federal litigation. Accordingly, the prosecution of those claims in state court is barred unless plaintiffs demonstrate that the circumstances here fall within a recognized exception to claim preclusion.

■ Plaintiffs invoke two such exceptions. First, plaintiffs argue that, even if claim preclusion would otherwise apply, defendants waived the right to raise this defense. In *Rennie*, 294 Or at 328, the Supreme Court recognized that "a defendant is free to waive the right to a combined action and

the parties are competent to agree mutually to the splitting and separate litigation of the various aspects of a plaintiff's claim." Plaintiffs argue that defendants effected such a waiver when, in response to a question from the federal trial judge, counsel for the VEBA defendants promised not to raise a "reverse ERISA preemption" defense in any subsequent proceedings.[9]

That statement does not constitute a waiver of claim preclusion. When the federal court asked for assurances that the defendants would not later assert a "reverse ERISA preemption" defense, the court was acting to ensure that the defendants would not "whipsaw" plaintiffs by (1) obtaining a dismissal of the federal litigation on the grounds that plaintiffs' claims were not cognizable under ERISA and (2) seeking a dismissal of the subsequent state proceedings on the grounds of ERISA preemption. A "reverse ERISA preemption" defense is qualitatively different than a defense of claim preclusion. Accordingly, counsel's assurance that she would not advance the former in subsequent proceedings was not a waiver of the ability to assert the latter.

Second, plaintiffs argue that the federal district court limited the effect of its dismissal and, in doing so, preserved plaintiffs' common-law claims. It is possible, in some circumstances, for a court to limit the preclusive effect of its judgment. *Drews*, 310 Or at 141 ("Where the decision maker expressly reserves for a party the right to maintain a second action or proceeding at the time the first determination is made, there is no preclusive effect."). That argument fails because that exception applies only when the court that adjudicated the first action *expressly* reserves a plaintiff's right to maintain a second action raising a particular claim. *Id.* at 141; *Rennie*, 294 Or at 330; *Aguirre*, 201 Or App at 51 n 22. Here, the federal trial court never addressed the common-law claims, other than to note that it saw the case as raising issues of fraud rather than ERISA. That observation falls far

---

[9] Great Southern and the Corben and Crosswhite defendants note that their counsel did not join in that statement, and asserted that, even if we were to determine that it did effect a waiver, it did so only with respect to the VEBA defendants. Given our determination that the statement did not effect a waiver of the defense of claim preclusion, we do not address that issue.

short of an express reservation of plaintiffs' ability to maintain a state court action raising a common-law fraud claim.

Affirmed.