Submitted on remand from the Oregon Supreme Court September 28, 2009,
reversed and remanded on appeal; cross-appeal dismissed as moot
February 16, 2011

RAM TECHNICAL SERVICES, INC.,
an Oregon corporation;
Charles Stalnaker;
and Susan Stalnaker,
*Plaintiffs-Appellants*
*Cross-Respondents,*

*v.*

John J. KORESKO;
Ram Technical Services Voluntary
Employees' Beneficiary Association;
Regional Employers' Assurance Leagues
Voluntary Employees' Beneficiary Association;
and Pennmont Benefit Services, Inc.,
a Pennsylvania corporation,
*Defendants-Respondents*
*Cross-Appellants,*

*and*

GREAT SOUTHERN LIFE INSURANCE COMPANY,
a Texas corporation;
The Corben Educational Services, Inc.,
an Oregon corporation;
and Thomas W. Crosswhite,
*Defendants-Respondents.*

Clackamas County Circuit Court
CV04100199; A130143

247 P3d 1251

Karla Alderman, Arden J. Olson, Craig J. Capon, and Harrang Long Gary Rudnick P.C. for appellants-cross-respondents.

Scott J. Kaplan, Charles F. Adams, and Stoel Rives LLP for respondents-cross-appellants.

R. Daniel Lindahl, Lisa E. Lear, and Bullivant Houser Bailey PC, and Andrew C. Hanan and Conrad O'Brien Gellman & Rohn, Pennsylvania, for respondent Great Southern Life Insurance Company.

Lee Wyatt and LA Wyatt, LLC, for respondents The Corben Educational Services, Inc., and Thomas W. Crosswhite.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

This case is on remand from the Oregon Supreme Court, which reversed our prior decision and remanded the case to us for further proceedings concerning several cross-assignments of error that we had no occasion to address in light of our disposition. *Ram Technical Services, Inc. v. Koresko*, 215 Or App 449, 171 P3d 374 (2007) (*Ram I*), *adh'd to as clarified on recons*, 217 Or App 463, 177 P3d 10 (2008) (*Ram II*), *rev'd*, 346 Or 215, 208 P3d 950 (2009) (*Ram III*). The issues on remand concern the trial court's denial of various motions to dismiss under ORCP 21. Specifically, we must determine whether the trial court erred in denying various defendants'[1] motions to dismiss (1) under ORCP 21 A(8) for failure to state a claim; (2) under ORCP 21 A(9) on statute of limitations grounds; and (3) under ORCP 21 A(3) because "an earlier action already was pending in Pennsylvania." Further, we must determine whether the trial court erred in denying a motion to dismiss defendant Koresko under ORCP 21 A(2) on the ground that it lacked personal jurisdiction over him in light of the "fiduciary shield doctrine." As explained below, we conclude that the trial court did not err in denying the motions. Accordingly, in light of the Supreme Court's decision in *Ram III* and our rejection of the Corben and Crosswhite defendants' and the VEBA defendants' cross-assignments of error, we reverse and remand on appeal and dismiss the cross-appeal as moot.

## I. THE FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are complex. For that reason and to provide context, we begin with a general overview of the undisputed procedural facts.

---

[1] As we indicated in *Ram I*,

"[t]hree groups of defendants appeared separately before the trial court and on appeal: (1) John J. Koresko, Ram Technical Services Voluntary Employees' Beneficiary Association, Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association, and Penn-Mont Benefit Services, Inc., a Pennsylvania corporation (the 'VEBA defendants'); (2) Great Southern Life Insurance Company ('Great Southern'); and (3) The Corben Educational Services, Inc., and Thomas W. Crosswhite (the 'Corben and Crosswhite defendants')."

215 Or App at 452 n 1. Consistently with *Ram I*, the term "defendants" refers to all defendants.

To the extent that resolution of the issues on remand requires that we augment those facts, we do so in the context of addressing the parties' contentions.

In July 2003, plaintiffs filed an action against defendants in the United States District Court for the District of Oregon. In their complaint in that action,

> "plaintiffs pleaded, *inter alia*, claims for 'rescission' and 'constructive trust' based on purported misrepresentations that induced plaintiffs, in 2000, to establish a 'voluntary employee benefits association' (VEBA) benefit plan for employees of plaintiff Ram Technical Services, Inc., and to purchase life insurance policies as a means of funding the VEBA plan. In particular, plaintiffs alleged that they had been told by certain defendants that they would not be required to make annual contributions to sustain the plan; however, by no later than June 11, 2002, plaintiffs first learned that those representations were false and that they were, in fact, required to make annual payments."

*Ram I*, 215 Or App at 452-53. Pursuant to 29 USC section 1132(a)(3) of the Employee Retirement Income Security Act (ERISA), plaintiffs sought either rescission of their agreement or imposition of a constructive trust on payments that they had made to defendants. Defendants moved to dismiss plaintiffs' complaint for failure to state a claim under ERISA, and the district court granted their motion, noting that "an action to rescind an employee benefit plan because of fraud in the inducement arises, if at all, under state law." *Ram III*, 346 Or at 219.

In April 2004, while the federal litigation was still pending, two of the VEBA defendants filed a complaint against plaintiffs as well as defendant Great Southern in Pennsylvania state court (the Pennsylvania action). In general, those VEBA defendants raised, *inter alia*, fraud and negligent misrepresentation claims against Great Southern and the Corben and Crosswhite defendants based on alleged statements concerning the operation, benefits, and tax consequences of the benefit plan and a claim to rescind the underlying insurance policies.

Then, in October 2004, also during the pendency of the federal action (and during the pendency of the

Pennsylvania action), plaintiffs filed this action in Clackamas County Circuit Court. In their complaint, plaintiffs

> "alleged claims of fraud and 'constructive trust' that were based on the same circumstances [that gave rise to the federal action], specifically, defendants' alleged misrepresentations and plaintiffs' alleged detrimental reliance on those representations, which were the bases of plaintiffs' claims in the federal litigation. Indeed, the allegations of the parties' conduct were a virtual 'cut-and-paste' of the parallel, operative allegations in the federal court complaint * * *."[2]

*Ram I*, 215 Or App at 454.

The Corben and Crosswhite defendants filed various motions to dismiss the case pursuant to ORCP 21. As pertinent to the issues on remand, the Corben and Crosswhite defendants contended that this case should be dismissed for failure to state a claim pursuant to ORCP 21 A(8) on the ground that the dismissal of the federal action "was on the merits and has a *res judicata* effect against all claims plaintiffs raised or could have raised" in that action. Alternatively, the Corben and Crosswhite defendants contended that, because plaintiffs filed this case in October 2004—more than two years after they knew of the alleged misrepresentations —plaintiffs' fraud claim was barred by the two-year statute of limitations and the trial court should have dismissed it pursuant to ORCP 21 A(9).

The VEBA defendants also filed various motions to dismiss pursuant to ORCP 21. Two of those motions command the bulk of our consideration on remand. *See* 240 Or App at 629-40.

First, the VEBA defendants moved to dismiss this case under ORCP 21 A(3) because the Pennsylvania action was pending. Specifically, they contended that the court should dismiss plaintiffs' claims in this case because the Pennsylvania action "will *necessarily adjudicate* the claims" whether or not plaintiffs assert a counterclaim in that action.

---

[2] As we noted in *Ram I*, the focus of plaintiffs' arguments in this case concerns their fraud claim. 215 Or App at 456. "That is, plaintiffs advance no distinct analysis pertaining to their 'constructive trust' claim, perhaps because they understand the two to be inextricably intertwined." *Id.*

(Emphasis in original.) In response, plaintiffs asserted that, under basic preclusion principles, "[b]ecause there are no compulsory counterclaims in Pennsylvania, and because plaintiffs have not sought any affirmative relief in Pennsylvania, the pending action in Pennsylvania does not preclude this action,"[3] and, accordingly, the court should not dismiss it.

Second, the VEBA defendants moved to dismiss defendant Koresko under ORCP 21 A(2) on the ground that the court lacked personal jurisdiction over him in light of the fiduciary shield doctrine."[4] They urged the trial court to adopt that doctrine and explained that, because "the fiduciary shield doctrine provides protection to Mr. Koresko, who was acting in his capacity for [defendant] Penn-Mont[,]" plaintiffs' "claims against him should be dismissed for lack of personal jurisdiction." Plaintiffs responded that the court should not adopt the "fiduciary shield doctrine" but that, even if it did, the doctrine would not apply under the circumstances of this case because the evidence submitted in opposition to the VEBA defendants' motions supported the allegations in their complaint and demonstrated that "Koresko acted at least in part on behalf of himself" rather than "solely in his capacity as counsel for and agent for Penn Mont[.]"

Ultimately, the trial court, without elaboration, denied the various defendants' motions to dismiss under ORCP 21.

Thereafter, defendants moved for summary judgment, arguing that claim preclusion and the statute of limitations provided complete defenses to plaintiffs' claims. The gravamen of defendants' claim preclusion argument was that

---

[3] Specifically, in support of plaintiffs' memorandum opposing the VEBA defendants' ORCP 21 motions, plaintiffs' attorney submitted an affidavit, indicating that "[p]laintiffs in this case have not filed counterclaims in Pennsylvania nor have they otherwise sought any affirmative relief." However, at one of the hearings concerning the ORCP 21 motions, plaintiffs' counsel indicated that plaintiffs had moved to dismiss the complaint in Pennsylvania "for want of personal jurisdiction over the * * * Stalnakers and over RAM because they never did anything in Pennsylvania." The parties have not alerted us that the Pennsylvania case has been resolved.

[4] *See Black's Law Dictionary* 702 (9th ed 2009) (defining the "fiduciary shield doctrine" as "[t]he principle that a corporate officer's act cannot be the basis for jurisdiction over the officer in an individual capacity").

plaintiffs' common-law fraud claim could have been brought by way of supplemental jurisdiction in the federal litigation and that no recognized exception to claim preclusion applied in these circumstances. *Ram I*, 215 Or App at 455. The trial court granted summary judgment on both grounds and entered judgment in defendants' favor.

Plaintiffs appealed, challenging the dismissal on summary judgment of their common-law fraud claim against defendants as being barred by claim preclusion arising from the determination of prior federal litigation between the parties. In *Ram I*, we held that, because plaintiffs could have raised their common-law claims in their prior federal litigation with defendants, they were precluded from litigating those claims in state court. That holding was essentially predicated on our understanding that "broadened [federal] supplemental jurisdiction rules not only allow[ed] plaintiffs to litigate both state and federal issues at once in federal court, but they also compel[led] plaintiffs to assert all of their transactionally related claims in a single federal forum—or risk losing them to claim preclusion." *Id.* at 461.

Given that holding and in light of our reasoning, we did not address whether "the statute of limitations also and independently barred the prosecution of this action." *Id.* at 452 n 2. Further, we did not address various cross-assignments of error raised by the Corben and Crosswhite and the VEBA defendants that were directed at the trial court's denial of various defendants' motions to dismiss pursuant to ORCP 21 A.[5] *Id.*

As noted, in *Ram III*, the Supreme Court reversed our decision. The court held that, "[b]ecause the record demonstrates that the district court would not have exercised supplemental jurisdiction over plaintiffs' state law claims,

---

[5] The VEBA defendants actually cross-appealed, assigning error to the trial court's denial of two of their motions to dismiss. In *Ram I*, we noted that the cross-appeal was "miscast" and indicated that the VEBA defendants "merely advance[d] alternative bases for affirming the dismissal[.]" 215 Or App at 452 n 2. However, in *Ram III*, the Supreme Court characterized the VEBA defendants' assignments of error on cross-appeal as "cross-assignments," 346 Or at 221, 237, presumably because they "d[id] not seek to reverse or modify the judgment on appeal[,]" ORAP 5.57. Accordingly, throughout this opinion, we refer to the VEBA defendants' "cross-assignments of error."

* * * claim preclusion does not bar plaintiffs from pursuing those claims in state court." 346 Or at 229.

Having rejected defendants' contentions concerning claim preclusion, the court then addressed defendants' alternative argument that, "even if claim preclusion is not a bar, plaintiffs' state action is untimely." *Id.* As the Supreme Court noted, and as was understood by the parties, the dispositive issue was whether the extended statute of limitations in ORS 12.220 applied to the circumstances of this case.[6] *Id.* The Supreme Court concluded that "plaintiffs' state action is based on the 'same claim' that plaintiffs pled in the federal action," *id.* at 236, and that "this is not a case in which the district court's ruling on plaintiffs' ERISA claim adjudicated the merits of their state fraud claims," *id.* at 235-36. Accordingly, the court held that "the extended statute of limitations in ORS 12.220 applies" and "plaintiffs' state action is timely." *Id.* at 236-37. As a consequence, the Supreme Court reversed our decision and remanded the case so that we could consider the cross-assignments of error that, because of our analysis, we had no occasion to address in *Ram I*.

## II. THE CORBEN AND CROSSWHITE DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO ORCP 21 A(8) AND ORCP 21 A(9)

Given the Supreme Court's directive, we turn first to the Corben and Crosswhite defendants' cross-assignments of error concerning the trial court's denial of their motions to

---

[6] ORS 12.220 provides, in part:

"(1) Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action, or is involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims against a defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed.

"(2) If, pursuant to subsection (1) of this section, a new action is commenced in the manner provided by ORS 12.020 not later than 180 days after the judgment dismissing the original action is entered in the register of the court, the new action is not subject to dismissal by reason of not having been commenced within the time allowed by statute."

dismiss for failure to state a claim "on the grounds of *res judicata*," ORCP 21 A(8), and statute of limitations, ORCP 21 A(9). We understand those motions to have been predicated on legal premises pertaining to claim preclusion and the operation of ORS 12.220 that the Supreme Court rejected in *Ram III* in reversing the allowance of summary judgment on those grounds. Accordingly, in light of the Supreme Court's disposition and analysis in *Ram III*, we reject the Corben and Crosswhite defendants' cross-assignments of error without further discussion.

### III. THE VEBA DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO ORCP 21 A(3) AND ORCP 21 A(2)

Resolution of the VEBA defendants' cross-assignments of error, however, requires a detailed discussion. Specifically, the VEBA defendants contend that the trial court "err[ed] in refusing to dismiss the Oregon action on the grounds that an earlier action already was pending in Pennsylvania," ORCP 21 A(3), and erred "as a matter of law in not dismissing plaintiffs' claims against [defendant Koresko] for lack of personal jurisdiction on the basis of the fiduciary shield doctrine," ORCP 21 A(2).

### A. *The Denial of Dismissal Pursuant to ORCP 21 A(3)*

We turn first to their cross-assignment of error concerning the court's failure to dismiss pursuant to ORCP 21 A(3) because there was another pending action in Pennsylvania that had been filed by two of the VEBA defendants against plaintiffs in this case as well as Great Southern and the Corben and Crosswhite defendants.[7] Because it provides context for the parties' contentions on review, we begin by describing the principles that inform our analysis of that legal ruling. *See Eli v. Lampert (A116201)*, 194 Or App 280, 282, 94 P3d 170 (2004), *rev den*, 338 Or 57 (2005) (reviewing ruling pursuant to ORCP 21 A(3) "for errors of law").

---

[7] Although our understanding is that two of the parties in this case—that is, defendants Koresko and RAM Technical Services Voluntary Employees' Beneficiary Association—are not parties to the Pennsylvania action, the parties do not contend that the Pennsylvania action was not another action "between the same parties" as contemplated by ORCP 21 A(3). Accordingly, we do not address and express no opinion as to that issue.

ORCP 21 A(3) provides for the dismissal of an action when "there is another action pending between the same parties for the same cause." In *Lee v. Mitchell*, 152 Or App 159, 164, 165, 953 P2d 414 (1998), we recognized that a dismissal for another action pending under ORCP 21 A(3) furthers the same purpose as that underlying the application of general claim preclusion principles—*viz.*, to "prevent[ ] requiring a party to litigate the same claim twice on the merits." Thus, there is a "close connection" between dismissal under ORCP 21 A(3) and the claim preclusion doctrines of merger and bar, and "determining whether either applies involves similar considerations." *Lee*, 152 Or App at 164-65. Accordingly, "[i]f entry of a judgment in the other pending actions would preclude plaintiffs from asserting any claims in this case, the court should dismiss those claims." *Id.* at 166 (footnote omitted).

In making that determination, we are guided by claim preclusion principles that we outlined in *G. B. v. Morey*, 229 Or App 605, 608-09, 215 P3d 879 (2009), *rev den*, 347 Or 608 (2010). Specifically, in that case, we explained:

"The doctrine of claim preclusion prohibits a party from relitigating the same claim or splitting a claim into multiple actions against the same opponent. The rule forecloses a party who has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance. A 'claim' is defined broadly as a group of facts which entitled the plaintiff to relief. In deciding whether a group of facts is part of the same claim, we inquire whether the transactions were related in time, space, origin, or motivation, and whether they form a convenient unit, as well as whether they were substantially of the same sort and similarly motivated."

229 Or App at 608-09 (citations, internal quotation marks, and brackets omitted).

Although claim preclusion principles operate generally to prohibit "claim splitting," there are some recognized rules that allow such splitting under certain circumstances. As pertinent here, one of those rules is that, in the absence of a compulsory counterclaim statute, "claim preclusion does not apply when the plaintiff in the second case failed, as a

defendant in the first case, to raise a counterclaim." *Id.* at 609 (emphasis omitted). *See also Lee*, 152 Or App at 166. Without such a rule, application of the principles of claim preclusion "would, in effect, create a law of compulsory counterclaim in Oregon" even though "[t]he law in this state is to the contrary." *Burlington Northern v. Lester*, 48 Or App 579, 583, 617 P2d 906 (1980).

■ That rule, however, is subject to an exception—*viz.*, "if the first case *necessarily adjudicated* the claim that the plaintiff pleads in the second case, that claim is precluded."[8] *G. B.*, 229 Or App at 609 (emphasis added). As amplified below, the necessarily adjudicated" exception is the predicate and lynchpin of the VEBA defendants' invocation of ORCP 21 A(3). Accordingly, we address its provenance and content in detail.

The "necessarily adjudicated" exception derives from a statement in the Supreme Court's decision in *Gwynn v. Wilhelm*, 226 Or 606, 610, 360 P2d 312 (1961). In that case, the Supreme Court stated:

> "[I]n the absence of a compulsory counterclaim statute, the defendant is not required to set up a counterclaim and his failure to do so does not preclude him from bringing a separate action against the plaintiff on the separate cause of action which was available to him as a counterclaim. This rule, however, is subject to the qualification that *a party can not recover in a separate action on a cause of action which he failed to plead in a prior action by way of setoff or counterclaim but which was necessarily adjudicated by the former judgment.*"

226 Or at 610 (emphasis added).

Although the "necessarily adjudicated" exception has developed in the context of claim preclusion, the Supreme Court recently elucidated that the exception is, in fact, predicated on principles of issue preclusion. In *State ex*

---

[8] There is a second exception to the rule as well—that is, "if the plaintiff in the second case actually asserted a counterclaim or otherwise sought affirmative relief as a defendant in the first case, claim preclusion applies in the same way that it would to a plaintiff filing a claim." *G. B.*, 229 Or App at 609. Because plaintiffs contend, and the VEBA defendants do not dispute, that that exception is inapplicable, we do not address it.

*rel English v. Multnomah County*, 348 Or 417, 433 n 11, 238 P3d 980 (2010), the court, quoting the italicized statement from *Gwynn*, explained:

> "[I]f the defendant actually raises a counterclaim in the first action, the rule of bar applies as though the defendant was a plaintiff in the first action. Further, the rules of issue preclusion apply so that 'a party can not recover in a separate action on a cause of action which he failed to plead in a prior action by way of setoff or counterclaim but which was necessarily adjudicated by the former judgment.' *Gwynn*[, 226 Or at 610]."

■■ Unlike claim preclusion, issue preclusion, in broad terms, "precludes future litigation on a subject issue only if the issue was *actually* litigated and determined in a setting where its determination was essential to the final decision reached." *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990) (internal quotation marks omitted; emphasis added). Accordingly, and given the Supreme Court's explanation of the underpinnings of the "necessarily adjudicated" exception, we understand that it applies when the factual and legal issues that the plaintiff raises in the second case were *actually* adjudicated and essential to the determination of the first case. Indeed, that understanding comports literally with the Supreme Court's description of the exception, *viz.*, "which *was* necessarily adjudicated," *Gwynn*, 226 Or at 610 (emphasis added)—and not "which *will be* necessarily adjudicated."

With those principles in mind, we turn to the VEBA defendants' contention that, "[u]nder ORCP 21 A(3), the Circuit Court should have dismissed this action in favor of the first-filed Pennsylvania case filed by the VEBA Defendants." Specifically, the VEBA defendants assert that,

> "[b]ecause of the relationship between Rule 21 A(3) and principles of claim preclusion, the real question under ORCP 21 A(3) is whether a judgment in the first-filed action * * * would bar plaintiffs from bringing the claim at a later time because the claim arises out of the same transaction. Because both cases arise out of the same transaction and the first-filed Pennsylvania action will decide the dispositive issue of whether or not there was fraud, Rule 21 A(3) requires dismissal in Oregon.

"Plaintiffs do not dispute that the precise factual issues being litigated in Pennsylvania—whether Great Southern's agent Crosswhite misrepresented the terms of its insurance policy and specifically whether yearly contributions were mandatory—are the same issues raised in this action. Plaintiffs' claims in Oregon are premised upon the existence of this alleged fraud. Therefore, if on remand this action is allowed to proceed, there is a high potential for inconsistent results. For example, Great Southern and its agents might prevail in one state and not prevail in another, resulting in a policy that is rescinded in one state but not another. Great Southern and its agents might be subject to multiple and duplicative damages awards. This kind of inconsistency is precisely what ORCP 21 A(3) is intended to prevent. There could also be an unseemly race to judgment in Pennsylvania and Oregon."

(Internal quotation marks and citations omitted.)

In sum, the VEBA defendants recognize that the availability of dismissal under ORCP 21 A(3) depends on the "necessarily adjudicated" exception. Specifically, the VEBA defendants appear to acknowledge that, because counterclaims are not compulsory in Pennsylvania,[9] preclusion would not prohibit plaintiffs, who failed to raise counterclaims as defendants in the first-filed Pennsylvania action, from raising their current claims unless the "necessarily adjudicated" exception applies. In invoking that exception, the VEBA defendants contend that the dispositive issue is "whether the first-filed Pennsylvania case *will necessarily adjudicate* the fraud claim in this later filed case"—and not that issues essential to the Oregon claims *have actually been adjudicated* in the Pennsylvania action. (Emphasis added.)

For their part, plaintiffs disagree that the "necessarily adjudicated" exception applies. Specifically, they disagree with the VEBA defendants' characterization of the exception

---

[9] *See School Dist. of the City of Monessen v. Apostolou Associates, Inc.*, 761 A2d 597, 601 (2000), *appeal den*, 565 Pa 674, 775 A2d 808 (2001) (noting that "the Pennsylvania Rules of Civil Procedure do not provide for compulsory counterclaims"); *American Telephone and Telegraph v. Clifford*, 406 Pa Super 128, 133, 593 A2d 903, 905 (1991) (noting that, "[u]nder Pennsylvania law, counterclaims are permissive and may be set forth in a party's answer, or may be reserved and set forth in an independent action").

as requiring a speculative examination of whether the first-filed Pennsylvania action *will necessarily adjudicate* their claims. Instead, they posit that the exception does not apply because the Pennsylvania action had not yet been adjudicated. Alternatively, they assert that, "[e]ven assuming [that] the Pennsylvania action makes its way to trial and * * * [the pertinent VEBA defendants prevail], plaintiffs in this case will not receive the relief to which they are entitled."

As framed by the parties, the dispositive legal issue is whether the "necessarily adjudicated" exception applies under the circumstances of this case.[10] As previously described, that exception applies only when the factual and legal issues that a plaintiff raises in a second action were *actually* adjudicated and essential to the determination of the first-filed action. *See* 240 Or App at 632. Because we understand that the Pennsylvania action has not been adjudicated, the exception does not apply.

In so holding, we emphasize three salient considerations. *First*, as noted—and consistently with *Gwynn*'s *"was* necessarily adjudicated" formulation, 226 Or at 610 (emphasis added)—the "necessarily adjudicated" exception finds its origin in issue preclusion principles that require the *actual* litigation and determination of pertinent legal and factual issues. *Second*, any determination that the Pennsylvania action *will* necessarily adjudicate the claims that plaintiffs raised here is speculative until a judgment is entered disposing of that case—indeed, the Pennsylvania action could settle without an adjudication of the merits. *Third*, applying the VEBA defendants' proposed "will necessarily adjudicate" construct would completely abrogate the rule (*viz.*, in the absence of a compulsory counterclaim statute, a plaintiff who, as a defendant, did not assert a counterclaim in the first action is not barred from raising that claim in the second action) that the "necessarily adjudicated" exception was intended to merely qualify. That is so, because defendant's formulation would, in effect, transmute noncompulsory counterclaims into compulsory ones. *See Burlington*

---

[10] The parties' presentation of the issue presumes that the same factual transaction is at issue in both the Pennsylvania action and this case. For purposes of our analysis and disposition, we assume, but do not decide, that that is so.

*Northern*, 48 Or App at 583 (stating the general rule that, in the absence of a compulsory counterclaim statute, claim preclusion does not apply when the plaintiff in the second case failed, as a defendant in the first case, to raise a counterclaim; reasoning that the rule is necessary to avoid requiring compulsory counterclaims where the law does not otherwise so provide).

Plaintiffs are not precluded from raising their current claims. Accordingly, the trial court did not err in denying the VEBA defendants' motion to dismiss pursuant to ORCP 21 A(3) on the ground that there was another action pending.

B.  *The Denial of Dismissal Pursuant to ORCP 21 A(2)*

We proceed, finally, to the VEBA defendants' cross-assignment of error challenging the trial court's denial of their motion to dismiss defendant Koresko under ORCP 21 A(2), for "lack of jurisdiction over the person." In particular, they assert that such a dismissal is compelled under the "fiduciary shield doctrine." According to the VEBA defendants, the "fiduciary shield doctrine" is a principle that "bars this court's exercise of personal jurisdiction over an individual who *at all times* was acting within his official capacity and scope of duty as an officer of a corporate defendant."[11] (Emphasis added.)

In *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 262, 40 P3d 506 (2002), we explained that,

"[i]n reviewing the denial of a motion to dismiss for lack of personal jurisdiction, we assume the truth of all well-pleaded allegations. *Sutherland v. Brennan*, 131 Or App 25, 28, 883 P2d 1318 (1994), *aff'd on other grounds*[,] 321 Or

---

[11] Similarly, in *Marine Midland Bank, N. A. v. Miller*, 664 F2d 899, 902 (2d Cir 1981), the Second Circuit described the "fiduciary shield doctrine" as an equitable principle:

"[I]f an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual. The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."

520, 901 P2d 240 (1995) (describing the identical assumption in context of the granting of a motion to dismiss for lack of personal jurisdiction). Plaintiffs have the burden of alleging and proving facts sufficient to establish personal jurisdiction. *Portland Trailer & Equipment v. A-1 Freeman Moving*, 166 Or App 651, 654, 5 P3d 604[, *adh'd to as modified on recons*, 168 Or App 654, 4 P3d 741] (2000). We construe pleadings and affidavits liberally to support jurisdiction.[12] *Id.*"

(Emphasis omitted.) Further, "[w]here, as here, the trial court made no express findings, we assume that the court found facts consistent with its judgment" and "review the court's assumed factual findings to determine whether they are supported by any competent evidence[.]" *Sutherland*, 131 Or App at 28 (internal quotation marks omitted). "Once the jurisdictional facts are established, we review the determination of personal jurisdiction for errors of law." *Kotera*, 179 Or App at 262.

Given that standard, we recount the material content of the pleadings and the parties' submissions pertaining to jurisdiction in some detail. In their complaint, plaintiffs alleged, in part, that defendants "Koresko and Crosswhite, on behalf of themselves, Corben, Penn-Mont, and Great Southern, told Plaintiffs that annual contributions by the Plaintiffs were not required in order to sustain the VEBA-funded benefit plan" and that plaintiffs were harmed as a result of their reasonable reliance on those representations.

As previously described, the VEBA defendants moved to dismiss defendant Koresko for lack of personal jurisdiction under the "fiduciary shield doctrine" and submitted

---

[12] ORCP 21 A provides, in part:

"If, on a motion to dismiss asserting defenses (1) through (7), the facts constituting such defenses do not appear on the face of the pleading and matters outside the pleading, including affidavits, declarations and other evidence, are presented to the court, all parties shall be given a reasonable opportunity to present affidavits, declarations and other evidence, and the court may determine the existence or nonexistence of the facts supporting such defense or may defer such determination until further discovery or until trial on the merits."

a supporting affidavit from Koresko.[13] Specifically, the VEBA defendants explained:

> "Mr. Koresko is the general counsel of Penn-Mont, alleged by plaintiffs to be the Plan administrator. Supposedly, according to plaintiffs, Mr. Koresko made representations both on behalf of himself as an individual and on behalf of Penn-Mont, but plaintiffs do not specify what representation was made in which capacity. However, Mr. Koresko states in his affidavit that all of his dealings with plaintiff have been in a representative capacity. Based upon this evidence, unless plaintiffs allege and can prove some act or omission by Mr. Koresko outside the scope of his duties for Penn-Mont, jurisdiction over him in Oregon is barred by the fiduciary shield doctrine."

Plaintiffs responded with their own argument and evidentiary submissions. Their arguments were two-fold. First, plaintiffs contended that the VEBA defendants "fail[ed] to offer authority to this Court that would support the proposition that Oregon should adopt the fiduciary shield doctrine." Second and alternatively, plaintiffs contended that, even if the trial court adopted the "fiduciary shield doctrine," it would not apply to the circumstances of this case because plaintiffs' evidence submitted in opposition to the VEBA defendants' motion supported the allegations in their complaint that "Koresko acted at least in part on behalf of himself" rather than "solely in his capacity as counsel for and agent for Penn Mont[.]"

Plaintiffs' evidence pertaining to personal jurisdiction included an affidavit from plaintiff Charles Stalnaker and various documents provided to plaintiffs as they considered whether to create the benefit plan that identified

---

[13] In that affidavit, Koresko stated:

"1. I am a resident of Pennsylvania and an officer of defendant Penn-Mont Benefit Services, Inc. ('Penn-Mont'). I am also an attorney admitted to practice in Pennsylvania and Florida.

"2. I do not recall ever meeting or talking to Charles or Susan Stalnaker. However, all of my visits to Oregon have been in my capacity of an officer of Penn-Mont. All of my dealings with the welfare benefit arrangement established by Ram Technical Services or its employees [or anything plaintiffs call 'Ram Technical Services Voluntary Employees Beneficiary Association'] have been in my capacity as an officer of Penn-Mont or attorney for that entity."

(Brackets in original.)

Koresko individually as an attorney or certified public accountant without reference to an association with Penn-Mont or any other VEBA defendant. In his affidavit, Stalnaker also states that, in October 2000, he attended a meeting at a hotel in Lake Oswego at which "Mr. Koresko specifically told me, in response to my question, that annual contributions were not required in order to sustain the VEBA."

As previously indicated, the trial court denied the motion without elaboration.

On appeal, the parties essentially reiterate the contentions that they raised to the trial court. For their part, the VEBA defendants again posit that,

"[a]lthough the question is one of first impression in the Oregon state courts, the VEBA Defendants maintain that defendant Koresko is entitled to the protection of the fiduciary shield doctrine. The acts or omissions alleged by plaintiffs, on the undisputed facts, were solely in his capacity as an officer and attorney for the corporate VEBA defendants. Under these circumstances, where the facts are not in dispute and there is no basis for applying the doctrines of alter ego and disregard for the corporate form, the Circuit Court should have found no personal jurisdiction over Koresko under the equitable doctrine of fiduciary shield."

The VEBA defendants' contentions on appeal are exceptionally narrow in scope. Consistently with their position before the trial court, on appeal the VEBA defendants do not contend that plaintiffs failed to demonstrate that the court had personal jurisdiction over Koresko under the standards articulated in ORCP 4, which provides various bases for an Oregon court's exercise of personal jurisdiction over a defendant. In fact, the VEBA defendants assert that

"the issue is not whether the Oregon courts have the constitutional power to exercise jurisdiction over Koresko, but whether they *should* do so instead of following Pennsylvania in adopting the fiduciary shield doctrine as an equitable limitation on their power when there is no evidence sufficient to pierce the corporate veil and no misuse of the corporate form."

(Emphasis in original.) Thus, we understand the VEBA defendants' position to be that personal jurisdiction over Koresko is lacking *only if* (a) the court adopts the "fiduciary shield doctrine" as an exception to the requirements of ORCP 4 and (b) the doctrine applies to the circumstances of this case.

■   We need not determine whether to adopt the "fiduciary shield doctrine" as described by the VEBA defendants.[14] That is so because, even if the VEBA defendants are correct that the "fiduciary shield doctrine" bars the "exercise of personal jurisdiction over an individual who *at all times* was acting within his official capacity and scope of duty as an officer of a corporate defendant," plaintiffs submitted evidence in opposition to the VEBA defendants' motion from which the trial court could have found that Koresko was not *at all times* acting within his "official capacity."

Despite various documents indicating that Koresko was acting in a representative capacity and Koresko's statements in his affidavit indicating that all of his visits and dealings with plaintiffs' "welfare benefit arrangement" were in his capacity as an officer or attorney for Penn-Mont, plaintiffs alleged that Koresko acted, at least in part, on his own behalf and, in support of those allegations, submitted some documentary evidence in which Koresko was held out as an individual without reference to any association with Penn-Mont or any other VEBA defendant. In light of our standard of review, that evidence was sufficient for the trial court to determine that, even if Oregon courts adopted the "fiduciary shield doctrine" as formulated by defendants, it did not apply to the circumstances of this case because Koresko, in his dealings with plaintiffs, did not at all times act "within his official capacity and scope of duty as an officer" of any of the VEBA defendants.[15]

---

[14] Our analysis and disposition imply no view as to that issue or as to the proper content and contours of the "fiduciary shield doctrine."

[15] In their reply brief, the VEBA defendants raise a qualitatively different contention than the one raised to the trial court or in their answering brief on appeal. Specifically, the VEBA defendants assert that "plaintiffs put into the record documents prepared by third parties * * * mentioning Koresko. It would be an unusual, though powerful, rule of law if Oregon residents could create jurisdiction over an out-of-state resident simply by talking about him in Oregon." In other words, the

The trial court did not err in denying the VEBA defendants' motion to dismiss for lack of jurisdiction under ORCP 21 A(2).

## IV. DISPOSITION

As previously described, plaintiffs appealed following the dismissal of their action after the trial court granted defendants summary judgment on claim preclusion and statute of limitations grounds. Within the context of that appeal, the Corben and Crosswhite defendants raised cross-assignments of error in which they sought to reverse the trial court's ruling concerning certain ORCP 21 motions. Similarly, the VEBA defendants also sought to reverse the trial court's rulings concerning two of their ORCP 21 motions. However, rather than raising cross-assignments of error in the context of plaintiffs' appeal, the VEBA defendants filed a cross-appeal. As we previously indicated, that cross-appeal was "miscast," and, for purposes of our analysis, we have treated the VEBA defendants' contentions as cross-assignments of error. Thus, in light of the Supreme Court's decision in *Ram III* and our rejection of the Corben and Crosswhite defendants' and the VEBA defendants' cross-assignments of error, we reverse and remand on appeal and dismiss the cross-appeal as moot.

Reversed and remanded on appeal; cross-appeal dismissed as moot.

---

VEBA defendants appear to assert that the plaintiffs have not satisfied their burden of eliciting facts sufficient to establish personal jurisdiction over Koresko.

That assertion comes much too late. The VEBA defendants did not preserve that contention in the trial court—and, indeed, raised it for first time in their reply brief in this court. As we have previously recounted, before the trial court, the VEBA defendants' sole jurisdictional contention was predicated on the adoption and application of the "fiduciary shield doctrine." They never asserted that plaintiffs had not elicited facts sufficient to establish personal jurisdiction over Koresko under the standards established in ORCP 4 and the corresponding case law. Accordingly, their belated, qualitatively different contention is unreviewable. *See* ORAP 5.45(1) (providing, generally, that "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule"); *Peeples v. Lampert,* 345 Or 209, 220, 191 P3d 637 (2008) (explaining that "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court"); *Hayes Oyster Co. v. Dulcich,* 170 Or App 219, 237 n 20, 12 P3d 507 (2000) (refusing to address argument raised for the first time in reply brief).